Yosh **HOKAMA, et al., Plaintiffs,**

v.

**E.F. HUTTON & CO., INC., et al., Defendants.**

No. CV 82–6330 MRP.
MDL No. 541.

United States District Court,
C.D. California.

June 17, 1983.

Marshall B. Grossman, Robert A. Shlachter, Alschuler, Grossman & Pines, Los Angeles, Cal., Richard A. Zellner, David C. Weiner, Hahn, Loeser, Freedheim, Dean & Wellman, Cleveland, Ohio, John R. Elrod, Elrod & Lee, Siloam Springs, Ark., Gary B. Garson, Cleveland, Ohio, for plaintiffs.

Rex Heinke, Gibson, Dunn & Crutcher, Dennis C. Brown, Munger, Tolles & Rickershauser, Los Angeles, Cal., David E. Massengill, Simpson, Thacher & Bartlett, New York City, Joseph P. Conran, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., Robert W. Fischer, Jr., Adams, Duque & Hazeltine, Alan E. Freidman, Tuttle & Taylor, Los Angeles, Cal., William E. McCurdy, Jr., St. Louis, Mo., Bryan, Cave, McPheeters & McRoberts, Los Angeles, Cal., Linda S.A. Burke, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, La., for defendants.

## MEMORANDUM AND ORDER

PFAELZER, District Judge.

Defendants' motions to dismiss and for summary judgment came on regularly for hearing on April 18, 1983 before the Honorable Mariana R. Pfaelzer. The Court, having considered the papers filed and oral arguments made, now files this Memorandum, which shall constitute its Findings of Fact and Conclusions of Law.

## I. BACKGROUND

Plaintiffs are "Type A" limited partners in defendant Wellspring Barge Limited Partnership ("the Partnership"), a limited partnership organized for the purpose of owning and operating river barges. Defendant Wellspring Energy Co. ("Wellspring") is the sole general partner. Defendant John P. Madgett, III ("Madgett") is president, treasurer, a director, a fifty percent shareholder, and the alleged alter ego of Wellspring. Defendant Consolidated Barge & Grain Co. ("Consolidated") is also a fifty percent shareholder and the alleged

alter ego of Wellspring. In addition, it conducts the Partnership's barge operations under an exclusive management agreement with the Partnership. Defendant Robert E. Frane ("Frane") is president, chairman of the board, a principal shareholder, and the alleged alter ego of Consolidated. Madgett, Consolidated, and Frane are all alleged to be general partners by virtue of their alter ego status. Defendant Equitable Shipyards, Inc. ("Equitable"), is a manufacturer of barges which sold them to the Partnership and provided interim financing for their purchase. Defendant Continental Illinois National Bank ("CINB") provided permanent financing for the purchase of the barges. Defendant E.F. Hutton, Inc. ("Hutton") marketed the limited partnership interests through its tax shelter department. Hutton is also the sole shareholder of E.F.H. Barge, Inc., a "Type B" limited partner, and is alleged to have become a general partner by virtue of its extensive participation in partnership affairs.

The terms on which the limited partnership interests were offered are detailed in the Private Placement Memorandum distributed to prospective investors, and in the Partnership Agreement. "Type A" limited partners were required to invest $150,000 per unit ($50,000 in cash, a $25,000 promissory note due in 1982, and a $75,000 promissory note due in 1984), and to assume a pro-rata share of the partnership indebtedness. In exchange, the limited partners received substantial tax benefits, primarily in the form of pro-rata allocations of the depreciation deductions and investment tax credit attributable to the barges. They also received the right to deduct their pro-rata shares of any partnership operating losses, and to receive cash distributions when partnership revenues permitted. No such distributions were projected until 1991 at the earliest, however.

The present litigation appears to have been precipitated by a series of cash calls made on the limited partners after the Partnership experienced poor initial operating results. Wellspring has already called upon plaintiffs for additional contributions of approximately $25,000 per unit, and ap-

parently plans to make further cash calls in the near future.

The complaint contains twelve separate causes of action. It charges all the defendants except CINB with violating sections 12(1), 12(2), and 17(a) of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. §§ 77*l*(1), 77 *l*(2), 77q(a); section 10(b) of the Securities Exchange Act of 1934 ("1934 Act") 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5; and analogous provisions of the California Corporations Code. The Partnership, Wellspring, Madgett, Consolidated, Frane, and Hutton are charged with both primary and secondary liability under these provisions, while Equitable is charged only with secondary liability as a conspirator and as an aider and abettor of the primary violations. The complaint also contains causes of action for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (all defendants except CINB); common law fraud (all defendants except CINB); breach of fiduciary duty and gross negligence (all defendants except Equitable and CINB); breach of duty to investigate (Hutton only); and rescission (CINB only).

Defendants, variously grouped, have filed five separate motions to dismiss, or in the alternative for an order requiring a more definite statement. Specifically, they challenge the validity of several of plaintiffs' theories of liability, notably RICO and aiding and abetting under the federal securities laws, and argue that the complaint fails to allege fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. In addition, defendants have moved for summary judgment with respect to the eighth cause of action for sale of securities not qualified as required under California law. Equitable has moved for a transfer or stay of proceedings as to it.

## II. DISCUSSION

### A. *Secondary Liability under the Federal Securities Laws*

Consolidated, Frane, and Equitable contend that the Ninth Circuit no longer recognizes liability for aiding and abetting federal securities law violations. In support of this contention, they cite a number of district court cases which refuse to recognize such liability in connection with section 12(2) violations on the ground that liability under section 12(2) is expressly limited to persons who offer or sell securities. *In Re Equity Funding Corp. of America Securities Litigation,* 416 F.Supp. 161, 181 (C.D.Cal. 1976); *McFarland v. Memorex Corp.,* 493 F.Supp. 631, 647–48 (N.D.Cal.1980); *Briggs v. Sterner,* 529 F.Supp. 1155, 1172–73 (S.D.Iowa 1981); *Hagert v. Glickman, Lurie, Eiger & Co.,* 520 F.Supp. 1028, 1034 (D.Minn.1981). In addition, they rely on a series of Ninth Circuit cases, known collectively as the *Seaboard* cases, in which the Court included a number of footnotes expressing doubt as to the continuing validity of implied secondary liability under the securities laws. *See Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1311 n. 12 (9th Cir.1982); *Admiralty Fund v. Jones,* 677 F.2d 1289, 1294 nn. 3–4 (9th Cir.1982); *Admiralty Fund v. Tabor,* 677 F.2d 1297, 1299 n. 2 (9th Cir.1982).

This Court does not agree with the defendants' interpretation of the *Seaboard* cases. In the footnotes referred to above, the Ninth Circuit merely acknowledged the suggestion which had been made by Professor Fischel that aiding and abetting and other "add on" theories of liability might be inappropriate in light of recent Supreme Court decisions adopting a restrictive approach to determining liability under the federal securities laws. *See Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d at 1311 n. 12 (citing Fischel, *Secondary Liability Under Section 10(b) of the Securities Act of 1934,* 69 Cal.L.Rev. 80 (1981)). In each of the *Seaboard* cases, however, the decision of the Ninth Circuit was to reverse the granting of summary judgment on the express assumption that such "add-on" theories of liability remained valid. *Admiralty Fund v. Tabor,* 677 F.2d at 1299 (conspiracy and aiding and abetting Rule 10b–5 violation); *Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d at 1311–12 (aiding and abetting

Rule 10b–5 violation); *Admiralty Fund v. Jones,* 677 F.2d at 1294 ("participating" in section 12(2) violation). Moreover, the Supreme Court has since reiterated that "the securities laws combatting fraud should be construed 'not technically and restrictively, but flexibly to effectuate [their] remedial purposes.' [citation omitted]," *Herman & MacLean v. Huddleston,* —— U.S. ——, 103 S.Ct. 683, 690, 74 L.Ed.2d 548 (1983) (permitting concurrent Rule 10b–5 action for conduct expressly actionable under section 11 of the 1933 Act). While this statement does not conclusively answer the doubts expressed in the *Seaboard* footnotes, it suggests that the continuing validity of implied secondary liability cannot be determined simply by general references to trends in statutory construction. The resolution of the question of implied secondary liability rather must depend upon an analysis of the particular violation alleged.

■ In the Ninth Circuit, the status of aider and abettor liability under section 10(b) of the 1934 Act and Rule 10b–5 has recently been resolved. In *Harmsen v. Smith,* 693 F.2d 932 (9th Cir.1982), the Court stated that "[i]n the absence of any authority or compelling reasons for holding that aider and abettor liability no longer exists, we hold that it remains a viable part of securities regulation," and dismissed any suggestion to the contrary in the *Seaboard* cases as *dicta. Id.* at 944. The Court went on to list elements of aiding and abetting in a section 10(b) case as (1) the existence of an independent primary wrong, (2) actual knowledge by the aider and abettor of the wrong and of his or her role in furthering it, and (3) substantial assistance in the wrong. *Id.* at 945. *Harmsen* is controlling with respect to the plaintiffs' claims under section 10(b) and Rule 10b–5.

The position of the Ninth Circuit with respect to secondary liability under sections 12(1) and 12(2) of the 1933 Act is less clear. In *Admiralty Fund v. Jones,* the Court expressly declined to consider whether the existence of the words "offers or sells" in section 12(2) forecloses aider and abettor liability under that section. 677 F.2d at 1294. Rather, it held that the definition of "seller" for purposes of primary liability under section 12(2) includes any party who "participates" in the unlawful transaction, and reversed summary judgment for the defendant on the ground that the extent of his participation was a disputed question of fact. *Id.* at 1294–95. In a footnote, the Court expressed the view that there appeared to be "little difference" between primary liability as a participant and secondary liability as an aider and abettor. *See id.* at 1294 n. 4. Despite the comment in this footnote, however, this Court is persuaded that there may in fact be significant differences between the two theories of liability.

■ The doctrine of participant liability under sections 12(1) and 12(2) was developed initially in a series of Fifth Circuit decisions, *see, e.g., Junker v. Crory,* 650 F.2d 1349 (5th Cir.1981) (citing previous authorities), and has been recognized by the Ninth Circuit on at least one occasion prior to its decision in *Admiralty Fund v. Jones. See SEC v. Murphy,* 626 F.2d 633, 650–51 (9th Cir.1980). The doctrine is essentially a judicial expansion of the privity requirement imposed by the statutory phrase "offers and sells," and as such is a theory of primary, not secondary liability. Accordingly, it appears that neither scienter nor reliance is an element of the prima facie case. *See Junker v. Crory,* 650 F.2d at 1351; *Sanders v. John Nuveen & Co.,* 619 F.2d 1222, 1225 (7th Cir.1980), *cert. denied,* 450 U.S. 1005, 101 S.Ct. 1719, 68 L.Ed.2d 210 (1981). Prima facie liability turns on whether the defendant's conduct was a substantial factor in bringing about the actual buy/sell transaction. If the defendant is not in literal privity with the plaintiff, his conduct must proximately cause the sale, or he must be a "motivating force" behind the sale; mere participation in the events leading up to the sale is not sufficient. *See SEC v. Murphy,* 626 F.2d at 650–51; *Junker v. Crory,* 650 F.2d at 1360; *Pharo v. Smith,* 621 F.2d 656, *aff'd in part and remanded in part on other grounds on rehearing,* 625 F.2d 1226 (5th Cir.1980).

■ By contrast, aider and abettor liability is a theory of secondary liability intended to apply to "fringe" parties who knowingly assist in a primary violation. *SEC v. Murphy*, 626 F.2d at 651 n. 20. *See also Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 94–97 (5th Cir.1975); *IIT v. Cornfeld*, 619 F.2d 909, 925–28 (2d Cir.1980); *Monsen v. Consolidated Dressed Beef Co.*, 579 F.2d 793, 800–01 (3rd Cir.1978), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). The critical element is scienter, and courts have generally declined to impose liability absent actual knowledge of the violation. *Harmsen v. Smith*, 693 F.2d at 943; *Woodward v. Metro Bank of Dallas*, 522 F.2d at 94–97 (degree of scienter required may be less where aider and abettor owes special duty to plaintiff).

■ The Court does not mean to suggest that it is a simple matter to distinguish between participant liability and aider and abettor liability in securities cases involving multiple parties. Indeed, some courts appear to have blurred the two concepts into one. *See In re Wickes Companies Securities Litigation*, [current] Fed.Sec.L.Rep. (CCH) ¶ 99,056 at 95,008–09 (S.D.Cal. Jan. 6, 1983) (denominating participant liability as secondary liability); *In Re Itel Securities Litigation*, 89 F.R.D. 104, 116 (N.D.Cal.1981) (defining aider and abettor as participant under section 12); *de Bruin v. Andromeda Broadcasting Systems*, 465 F.Supp. 1276, 1280 (D.Nev.1979) (same). Nonetheless, the Court is of the view that such a distinction can and should be made, and agrees with defendants that aider and abettor liability is unavailable under section 12. *See In re Equity Funding Corp. Securities Litigation*, 416 F.Supp. at 181; *Hagert v. Glickman, Lurie, Eiger & Co.*, 520 F.Supp. at 1034. *See also Croy v. Campbell*, 624 F.2d 709, 713 n. 5 (5th Cir.1980). Accordingly, the Court dismisses all claims for aiding and abetting violations of sections 12(1) and 12(2). Any claims under those sections must be alleged to be against participants as that term is defined in the authorities cited above.

■ Finally, there remains the question of whether liability exists for aiding and abetting violations of section 17(a) of the 1933 Act. In *Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808 (9th Cir.1981), the Ninth Circuit upheld a private right of action against primary violators of that section. Although few other courts have addressed the issue, the Court sees no reason for not permitting actions against aiders and abettors as well. Section 17(a) contains no privity restriction akin to that contained in section 12. *See Hagert v. Glickman, Lurie, Eiger & Co.*, 520 F.Supp. at 1034. At least one district court, noting the availability of aider and abettor liability in SEC enforcement actions under section 17(a), has similarly concluded that such secondary liability extends to private actions as well. *In re Wickes*, [current] Fed.Sec.L.Rep. (CCH) ¶ 99,056 at 95,009–10. Recent authority further suggests that the elements of aider and abettor liability under section 17(a) should be the same as those of aider and abettor liability under Rule 10b–5. *See Cleary v. Perfectune*, 700 F.2d 774, 779–80 (1st Cir.1983) (possible absence of scienter requirement for primary violators of section 17(a) does not justify relaxation of scienter requirement for fringe parties charged as aiders and abettors). The Court agrees with that conclusion as well.

## B. *Failure to State a Claim under RICO*

■ Defendants have all moved to dismiss plaintiffs' fifth cause of action for violation of RICO. Enacted as part of the Organized Crime Control Act of 1970, RICO is a wide ranging statute designed to combat organized crime. Among other things, it authorizes civil treble damage actions by persons injured in their business or property by reason of violations of its provisions. 18 U.S.C. § 1964(c). Statutory liability extends to any party who belongs to an "enterprise" which conducts a "pattern of racketeering activity." 18 U.S.C. § 1962(c). An "enterprise" is defined as any group of individuals or legal entities associated in law or in fact, while "racketeering activity" includes violation of the federal statutes proscribing mail fraud and securities fraud. 18 U.S.C. § 1961(1)–(4). A "pattern of

racketeering activity" consists merely of two or more acts of racketeering activity committed within a ten year period. 18 U.S.C. § 1961(5).

It is apparent from this brief description that RICO, if interpreted literally, provides an added cause of action for treble damages in any securities fraud case involving two or more unlawful sales. Defendants cite numerous cases in which courts, unwilling to believe that this was Congress' intention, have attempted to limit the application of the statute to avoid this extraordinary result. These cases generally take one of three approaches, each of which is urged upon the Court by defendants. First, a number of courts have refused to extend civil RICO liability to ordinary securities fraud cases in which the plaintiffs have not alleged a "nexus to organized crime." *See, e.g., Barr v. WUI/TAS, Inc.*, 66 F.R.D. 109 (S.D.N.Y.1975). A related group of cases has focused on the "enterprise" element, requiring plaintiffs to allege something in the nature of an ongoing criminal enterprise. *See, e.g., Moss v. Morgan Stanley, Inc.*, 553 F.Supp. 1347 (S.D.N.Y.1983). Still a third group of cases has stressed the requirement that the injury be "by reason of" a RICO violation, requiring that plaintiffs plead a "racketeering enterprise injury" distinct from any injury compensable under statutes creating civil liability for the predicate acts. *See Harper v. New Japan Securities*, 545 F.Supp. 1002 (C.D.Cal.1982); *Johnsen v. Rogers*, 551 F.Supp. 281 (C.D. Cal.1982).

None of these approaches is entirely satisfactory. The limitations articulated in the second and third groups of cases appear to this Court to be little more than indirect statements of the first-mentioned requirement that plaintiffs demonstrate a "nexus to organized crime." That approach, while commendably direct, has been rejected by a number of courts as both unworkable and contrary to the legislative intent. *See Schact v. Brown*, 711 F.2d 1343, Fed. Sec.L.Rep. (CCH) ¶ 99,160 (7th Cir. April 8, 1983); *Bennett v. Berg*, 685 F.2d 1053 (8th Cir.1982), *pet. for reh. granted*, Sept. 17, 1982; *Crocker Nat. Bank v. Rockwell*

*International Corp.*, 555 F.Supp. 47 (N.D. Cal.1982); *Liston v. USLIFE Corp.*, [current] Fed.Sec.L.Rep. (CCH) ¶ 99,033 (C.D. Cal. Dec. 9, 1982). It has also been rejected by the Ninth Circuit in connection with criminal liability under RICO. *United States v. Campanale*, 518 F.2d 352 (9th Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976).

The Ninth Circuit has not yet had occasion to rule on the validity of the "nexus to organized crime" limitation in civil RICO actions. In this Court's view, the issue is a difficult one on which reasonable minds may differ. On the one hand, the legislative history indicates that Congress intentionally drafted the statute broadly in order to forestall the possibility that some organized criminals might elude its coverage. *See generally* Blakey, *The RICO Civil Fraud Action in Context*, 58 Notre Dame L. Rev. 237 (1982). Congress also rejected an amendment that would have limited liability to members of certain known criminal organizations after doubts were raised as to the constitutional validity of grounding criminal liability on membership in a named group. *See id.* at 279. On the other hand, it is clear that the overriding purpose of Congress in enacting RICO was to "seek the eradication of organized crime." *United States v. Turkette*, 452 U.S. 576, 589, 101 S.Ct. 2524, 2531, 69 L.Ed.2d 246 (1981); *United States v. Marubeni American Corp.*, 611 F.2d 763, 769 n. 11 (9th Cir.1980). As Judge Pollack stated in *Moss v. Morgan Stanley*, 553 F.Supp. at 1361:

> [T]here is nothing in the legislative history to suggest that Congress intended to create a private right of action for treble damages for violations of substantive statutes by ordinary business or parties.

This Court agrees with Judge Pollack that such an interpretation of the statute and the legislative history is implausible, and holds that insofar as civil liability actions predicated on federal securities law violations are concerned, plaintiffs must allege some link to organized crime, however defined. The complaint here contains no

allegations suggesting that this action has any connection whatsoever to the evils which RICO was designed to combat. Accordingly, the fifth cause of action for violation of RICO is dismissed for failure to state a claim upon which relief can be granted.

### C. *Summary Judgment on State Law Registration Claim*

Defendants have moved for summary judgment with respect to plaintiffs' eighth cause of action under California Corporations Code § 25503. Section 25503 provides a private civil remedy for violations of section 25110, which bars the sale of securities without proper qualification. Defendants maintain that because they in fact qualified the sale of the securities in question by obtaining a permit as required under section 25110, they cannot be held liable under § 25503. Plaintiffs argue in response that liability is authorized under section 25503 because: (1) defendants' application for the permit contained fraudulent representations and omissions which rendered the permit invalid, and (2) defendants' failure to amend the permit to reflect alleged changes in the availability of permanent financing for the barge purchase rendered the permit inapplicable to the securities actually sold.

Neither of these arguments is persuasive. The California Corporations Code contains a carefully drafted set of remedies for violations of its provisions. Unlike the remedial provisions of the federal securities laws, they are strictly construed. Section 25510 provides in pertinent part:

> Except as explicitly provided in this chapter, no civil liability in favor of any private party shall arise against any person by implication from or as a result of the violation of any provision of this law or any rule or order hereunder.

Cal.Corp.Code § 25510.

Defendants correctly point out that material misrepresentations and omissions made in connection with securities offerings are expressly actionable under sections 25500 and 25501. Under section 25510, these remedies are exclusive. Section 25160 requires that all information required to be included in a permit application be true and complete as of the effective date of the qualification, but the Code provides no civil remedy for violation of that section. Further, the Code nowhere provides that such misrepresentations or omissions render a permit automatically invalid, nor does it require that issuers file amendments to maintain qualification. Section 25162 authorizes post-effective amendments on a permissive rather than mandatory basis, in order to accommodate issuers who wish to change the terms and conditions of an offer without filing a new permit application. *See* H. Marsh, *Practice under the California Securities Laws* § 6.06[2].

It is clear from the statutory scheme that section 25503 does not provide a private civil remedy for material misrepresentations or omissions in a permit or application for qualification. The propriety of plaintiffs' claim under that section therefore turns solely on the issue of whether the securities sold by defendant conformed to the description stated in their permit. Plaintiffs rely on a number of California decisions finding sales of securities on terms and conditions different from those listed in the permit to be unlawful. *See, e.g., People v. Witzerman,* 29 Cal.App.3d 169, 182–83, 105 Cal.Rptr. 284, 293 (1972). These cases are inapposite here, however, as it is clear from the record that defendants offered and sold the limited partnership units on the terms and conditions listed in their permit. The Court is not persuaded that the allegedly undisclosed change in the availability of one of the proposed permanent financing plans for the barge purchase amounted to a change in the terms and conditions on which the securities were offered. Accordingly, defendants are entitled to summary judgment with respect to the eighth cause of action.

### D. *Failure to Plead Fraud with Particularity*

All of the defendants have moved to dismiss on the ground that plaintiffs have failed to allege fraud with particularity as

required by Rule 9(b) of the Federal Rules of Civil Procedure. The operative allegations in this regard are contained in paragraph 19 of the complaint, which lists thirteen allegedly fraudulent representations and omissions with respect to (1) the proposed financing of the Partnership barge purchase, (2) the intended use of Partnership capital, (3) the financial prospects of the Partnership, (4) the experience and financial condition of Wellspring, Consolidated, and Equitable, (5) the condition of the barge industry, and (6) the scope of certain powers of attorney signed by the limited partners. Defendants contend that notwithstanding these allegations, the complaint is deficient in that it (1) fails to adequately describe the alleged misrepresentations and omissions, (2) fails to identify the source of the misrepresentations and omissions, (3) fails to distinguish between defendants or describe their roles in the fraud, (4) fails to allege facts supporting an inference of scienter, and (5) fails to allege the elements of aider and abettor liability with particularity.

Defendants rely primarily on a series of Second Circuit cases which have adopted an expansive interpretation of Rule 9(b) in securities fraud cases. *See, e.g., Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111 (2nd Cir.1982). They also cite a district court case from the Ninth Circuit which follows the Second Circuit approach. *See McFarland v. Memorex Corp.,* 493 F.Supp. 647 (N.D.Cal.1980). Plaintiffs counter by citing a series of Ninth Circuit cases which they argue require a more relaxed interpretation of Rule 9(b), and argue that *McFarland* must be viewed as an aberration. *See Walling v. Beverly Enterprises,* 476 F.2d 393 (9th Cir.1973); *Gottreich v. San Francisco Investment Co.,* 552 F.2d 866 (9th Cir. 1977); *Bosse v. Crowell, Collier and MacMillan,* 565 F.2d 602 (9th Cir.1977).

The Court concludes that apart from the pleading of scienter, the complaint is deficient even under the relaxed interpretation of Rule 9(b) urged by plaintiffs. In *Walling v. Beverly Enterprises,* the Ninth Circuit described the requirements of Rule 9(b) as follows: " 'rule 9(b) does not require nor

make legitimate the pleading of detailed evidentiary matter.' [citation omitted] Nor does Rule 9(b) require any particularity in connection with an averment of intent, knowledge, or condition of mind. It only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." 476 F.2d at 397. The Court then went on to hold that on the facts before it, allegations of the time, place, and nature of the fraudulent activities were sufficient. *Id.*

■ It is clear both from *Walling* and from the express language of Rule 9(b) that plaintiffs are entitled to plead the defendants' scienter in conclusory fashion. Only the Second Circuit has held to the contrary, *see Ross v. A.H. Robins,* 607 F.2d 545, 558 (2nd Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980), but it has not done so consistently. *See IIT v. Cornfeld,* 619 F.2d at 923–24. Other circuits have also rejected *Ross* and interpreted Rule 9(b) to mean what it says. *See McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228 (1st Cir.1980).

The standard announced in *Walling* does not, however, exempt plaintiffs from the requirement that they identify the source of the fraud and distinguish among the defendants with respect to their roles in it. As defendants correctly point out, *Walling* and the two subsequent Ninth Circuit cases cited by plaintiffs were relatively simple fraud claims involving relatively few parties. *Walling* and *Bosse* each involved single defendants, while in *Gottreich,* the defendants were two investment companies and their broker employees. Even without endorsing the strict view of Rule 9(b) taken by the Second Circuit and the district court in *McFarland,* it is certainly not unreasonable to require the plaintiffs here to specify the role of each defendant in the fraud. The district court cases cited by plaintiffs as examples of the less stringent Ninth Circuit view seem to require at least this much. *E.g., Zatkin v. Primuth,* 551 F.Supp. 39, 42 (S.D.Cal.1982) (noting that state-

ments were attributed to individual defendants where possible). Moreover, there are not so many defendants here that plaintiffs cannot meet this requirement without running afoul of Rule 8(a). *Cf. In re Equity Funding,* 416 F.Supp. at 181. Finally, the weight of authority indicates that the roles of aiders and abettors must be pleaded with specificity as well. *Zatkin v. Primuth,* 551 F.Supp. at 42–43; *Kirshner v. Goldberg,* 506 F.Supp. 454, 458 (S.D.N.Y.1981).

■ The present complaint falls short of these minimal requirements in several respects. First, it does not adequately apprise defendants of the "time, place, and nature" of the fraud in that it fails to specifically identify the documents or statements containing the allegedly fraudulent representations. Counsel for plaintiffs stated at oral argument that this action is based on omissions in the Private Placement Memorandum. If that is the case, plaintiffs should so state in the complaint. The complaint must specify the alleged source of the misrepresentations and omissions claimed.

Moreover, although the complaint specifies the general relationships among the defendants with respect to the overall barge enterprise, it contains no specific allegations regarding the roles of the various defendants in the preparation and dissemination of the fraudulent representations, or in the solicitation and consummation of the unlawful sales. As discussed above, the present conclusory allegations of "participation" and "substantial assistance" are insufficient even under the Ninth Circuit authorities relied on by plaintiffs. Plaintiffs are not required to plead detailed evidentiary matter, but they must allege the roles of the defendants in sufficient detail to permit each to assess and answer the various claims of primary and secondary liability asserted in the complaint.

With the exception of the registration claim under section 12(1), all of plaintiffs' federal claims are grounded in fraud and thus subject to dismissal for failure to comply with Rule 9(b). The same is true for most of plaintiffs' state law claims. Fur-

ther, it is within the Court's discretion to require more specific pleading of claims not technically within the ambit of Rule 9(b) where doing so will expedite discovery and other pretrial proceedings. *See Anspach v. Bestline Products, Inc.,* 382 F.Supp. 1083 (N.D.Cal.1974). Requiring more specific pleading of the roles of the various defendants in connection with the federal registration claim and the non-fraud state claims is amply justified here. Accordingly, all of the remaining claims should be dismissed with leave to amend in accordance with the standards discussed above.

### E. *Remaining Motions for Failure to State a Claim under Federal and State Securities Laws*

Defendants' remaining motions to dismiss for failure to state a claim are for the most part directed to the sufficiency of plaintiffs' factual pleadings. These motions are denied in view of the Court's decision to dismiss the remainder of the complaint with leave to amend for failure to comply with Rule 9(b). In the hope of forestalling duplicative efforts with respect to future amended complaints, however, the Court will briefly address the remaining contentions raised by the defendants.

#### 1. *Madgett, Consolidated, and Frane*

■ Madgett, Consolidated, and Frane argue that the complaint fails to state a claim for "controlling person" liability under section 15 of the 1933 Act and section 20(a) of the 1934 Act. 15 U.S.C. §§ 77o, 78t. Both of these sections impose liability on persons who control primary violators under the acts. Control consists of "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." *Safeway Portland Employees' Federal Credit Union v. C.H. Wagner & Co.,* 501 F.2d 1120, 1124 n. 17 (9th Cir.1974).

■ In the Court's view, the present complaint more than adequately alleges the

power to control through stock ownership. In order to hold defendants liable under section 20(a), however, plaintiffs are further required to demonstrate that defendants "participated" in the primary violations. *See Christoffel v. E.F. Hutton,* 588 F.2d 665, 668–69 (9th Cir.1978). As noted above, the present allegations regarding the participation of Madgett, Consolidated, and Frane are entirely conclusory. Although the level of participation required of controlling parties is not clear, it appears that plaintiffs will have to allege some sort of conduct beyond mere inaction on the part of the controlling parties. *See id.* at 669 (declining to decide whether participation need be "culpable"). *See also Kersh v. General Council of the Assemblies of God,* 535 F.Supp. 494, 498 (N.D.Cal.1982) (declining to interpret *Christoffel* as overruling prior Ninth Circuit decisions grounding liability under section 20(a) on reckless failure to supervise).

■ Defendants further argue that plaintiffs cannot circumvent the requirements for secondary liability by blandly alleging that Madgett, Consolidated, and Frane are "alter egos" of other defendants accused of committing primary violations. This point is well taken. The term "alter ego" refers to a doctrine of corporation law under which courts may at times disregard corporate entities. *See id.* at 496. If plaintiffs wish to pursue such a theory of liability, they must allege the elements of the doctrine. Conclusory allegations of alter ego status such as those made in the present complaint are not sufficient. *Cf. MTC Shipping v. Sabet,* 497 F.Supp. 1078, 1088 (S.D.N.Y.1980).

### 2. The Partnership, Wellspring, and Madgett

■ The Partnership, Wellspring, and Madgett argue that the complaint fails to adequately allege reliance. This argument is without merit. As plaintiffs correctly point out, reliance is not an element of a prima facie case under section 12(2). *Junker v. Crory,* 650 F.2d at 1362; *Alton Box Board Co. v. Goldman, Sachs & Co.,* 560 F.2d 916, 924 (8th Cir.1977). With respect to sections 10(b) and 17(a), reliance is required, *see Kramas v. Security Gas and Oil, Inc.,* 672 F.2d 766, 769–70 (9th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982), but is presumed to the extent plaintiffs' suit is based on material omissions. *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Neither the Supreme Court nor the Ninth Circuit has decided whether a presumption of reliance extends to material misrepresentations as well. *Kramas v. Security Gas and Oil, Inc.,* 672 F.2d at 769 n. 2. It is not necessary to decide the issue here, however, as the present complaint does in fact allege reliance, at least with respect to the Rule 10b–5 claim. It does not appear to do so with respect to the section 17(a) claim, but this defect is easily curable.

■ The Partnership, Wellspring, and Madgett also argue that the complaint fails to state a claim for rescission because it (1) fails to allege tender of the securities to the proper party, and (2) fails to allege that plaintiffs' recovery must be reduced by the amount of any tax benefits realized as a result of the investment. These arguments are also meritless. In a complaint for rescission under section 12, a general allegation of tender is sufficient. *Chapman v. Dunn,* 414 F.2d 153, 160 (6th Cir.1969). Plaintiffs allege tender to all defendants alleged to be sellers within the meaning of section 12. While the appropriate party for tender here would appear to be the Partnership, *see SEC v. Murphy,* 626 F.2d at 642, the Court sees no reason why plaintiffs cannot allege tender to the remaining defendants as well.

In support of their second contention, defendants rely on *Austin v. Loftsgaarden,* 675 F.2d 168 (8th Cir.1982), in which the Eighth Circuit held that rescissionary damages in section 12(2) actions involving tax shelter investments must be reduced by any tax savings realized by the investors. This Court expresses no opinion as to the applicability of that decision here, although it notes that more recent decisions have held

that any such offset must be reduced by amounts lost on termination of the investment by operation of the recapture and tax benefit rules. *See Western Federal Corp. v. Davis,* 553 F.Supp. 818, 820–21 (D.Ariz. 1982). At present, it is sufficient to hold that plaintiffs' failure to allege a possible offset in no way constitutes a pleading defect. To the contrary, it is the Court's view that the burden of pleading and proving any such offset properly rests with defendants.

### 3. *Equitable*

Equitable contends that the complaint fails to state a claim for aider and abettor liability under sections 10(b) and 17(a) because it does not adequately allege the requisite "substantial assistance" in a primary violation. This issue is inappropriate for resolution here in view of the Court's order dismissing the complaint with leave to amend. The Court notes, however, that the authorities giving content to the "substantial assistance" requirement appear to require very little in the way of affirmative conduct once the requisite degree of scienter has been established. The most recent Ninth Circuit authority on the subject, *Strong v. France,* 474 F.2d 747 (9th Cir. 1973), suggests that even inaction can give rise to liability when the defendant has an independent duty to act. More recent cases from other circuits suggest that inaction may be sufficient even absent a duty to act if a party possesses "high conscious intent" to further a fraud for its own benefit. *See Woodward v. Metro Bank of Dallas,* 522 F.2d at 97; *IIT v. Cornfeld,* 619 F.2d at 925–28; *Monsen v. Consolidated Beef Co.,* 579 F.2d at 800. *See also Cleary v. Perfectune,* 700 F.2d at 778–79.

▮ Equitable also challenges plaintiffs' seventh cause of action for violation of section 25500 of the California Corporations Code, which provides a private civil remedy against any person who "willfully participates in any act or transaction in violation of section 25400 . . . ." Equitable argues that section 25500 imposes liability only on persons who themselves violate section 25400, which as relevant here applies only to broker-dealers and persons who offer or sell securities. The Court does not agree. In contrast to the immediately subsequent sections of the Code, which impose civil liability only on direct violators, *see* Cal. Corp.Code §§ 25501–25503, section 25500 imposes liability on any person who "participates" in a violation. Absent California authority indicating otherwise, the Court concludes from this difference in statutory wording that liability under section 25500 is not limited to direct violators of section 25400. It remains to be seen whether plaintiffs can successfully plead the requisite participation by Equitable, as the pleading requirements discussed above in connection with the federal securities claims apply with equal force here.

### 4. *Hutton*

▮ Hutton contends that portions of the complaint must be dismissed for failure to adequately allege "loss causation" as well as "transaction causation." *See Huddleston v. Herman & MacLean,* 640 F.2d 534, 549 (5th Cir.1981), *aff'd in part and rev'd in part on other grounds,* —— U.S. ——, 103 S.Ct. 683, 74 L.Ed.2d 548. Specifically, Hutton argues that any losses suffered by plaintiffs are due solely to the Partnership's current inability to meet its debt service, which in turn has necessitated the cash calls to which plaintiffs object. Hutton therefore concludes that all damage claims based on misrepresentations or omissions not related to the Partnership's earnings prospects must fail for lack of proximate causation.

The Court concludes that the present complaint adequately pleads causation, and that the matters raised by Hutton are matters of proof rather than pleading. Accordingly, the Court takes no position with respect to the merits of Hutton's argument. At present, it is sufficient to observe that distinguishing among the various misrepresentations and omissions as Hutton requests would of necessity involve factual judgments inappropriate to a motion to dismiss.

**5. CINB**

CINB has moved to dismiss the final cause of action for rescission of the assumption agreements executed by plaintiffs in favor of CINB. CINB notes that Sections 29(b) and (c) of the 1934 Act, upon which plaintiffs rely, require a demonstration that the bank had "actual knowledge" that the assumption agreements were fraudulently obtained. CINB contends that plaintiffs can demonstrate no more than that CINB had notice of possible securities fraud claims against the other defendants. Relying on *Gunter v. Hutcheson,* 492 F.Supp. 546, 559 (N.D.Ga.1980), *affirmed,* 674 F.2d 862 (11th Cir.), *cert. denied,* ⸺ U.S. ⸺, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), CINB argues that "mere notice" is not sufficient to support a rescission claim under sections 29(b) and (c).

CINB's motion must be denied. As noted above, the Federal Rules of Civil Procedure require no more than general averments of knowledge. In this regard, plaintiffs pleadings are more than sufficient to survive a motion to dismiss. To the extent that CINB wishes the Court to consider materials outside the pleadings and treat its motion as one for summary judgment, the Court declines to do so. *See Texas Partners v. Conrock Co.,* 685 F.2d 1116, 1119 (9th Cir.1982), *appeal dismissed,* ⸺ U.S. ⸺, 103 S.Ct. 1281, 75 L.Ed.2d 501 (1983).

**F. *Equitable's Motion to Dismiss, Transfer, or Stay***

Equitable has moved to dismiss for lack of personal jurisdiction. Alternatively, Equitable asks the Court to transfer all claims against it to the Eastern District of Louisiana, or to stay all claims against it pending the outcome of a related action in Louisiana.

These motions are denied in view of the Court's decision to dismiss the entire complaint for failure to comply with Rule 9(b). Assuming plaintiffs can amend their complaint to state a federal securities claim against Equitable, the Court will have jurisdiction under the nationwide service of process provisions of the securities laws. 15

U.S.C. §§ 77v(a), 78aa. *See Mariash v. Morrill,* 496 F.2d 1138, 1142–43 (2nd Cir. 1974). Similarly, venue will be proper under the provision of the securities laws authorizing actions in any district where a violation occurred. At present, the Court sees no reason to transfer or stay the proceedings as to Equitable, particularly in view of the order of the Judicial Panel on Multidistrict Litigation consolidating related litigation in this district for pretrial proceedings. *Cf. In re Equity Funding,* 416 F.Supp. at 178–79.

For the reasons stated herein,

IT IS ORDERED:

1. That the allegations of aiding and abetting violations of sections 12(1) and 12(2) of the 1933 Act are dismissed for failure to state a claim on which relief can be granted;

2. That the fifth cause of action for violation of RICO is dismissed for failure to state a claim on which relief can be granted;

3. That defendants' motions for summary judgment with respect to the eighth cause of action are granted;

4. That the remainder of the complaint is dismissed for failure to comply with Rule 9(b) of the Federal Rules of Procedure;

5. That the remaining motions to dismiss, transfer, or stay are denied; and

6. That plaintiffs shall have forty-five days to amend the complaint in accordance with this Memorandum.