A. GIACOMINI, S.p.A., et al., Plaintiffs,

v.

**UNITED STATES of America,
Defendant.**

Court No. 89–10–00583.

United States Court of
International Trade.

March 8, 1991.

Davis, Graham & Stubbs, Barry E. Cohen, Frederick P. Waite, Washington, D.C., for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, A. David Lafer (Tanya J. Potter, Washington, D.C., U.S. Dept. of Commerce, of counsel), for defendant.

## OPINION

MUSGRAVE, Judge.

This action is an appeal by the plaintiffs of an administrative review by the Department of Commerce ("Commerce") of an antidumping order applicable to certain brass fire hose connectors and valves from Italy.[1] The plaintiffs are A. Giacomini, S.p.A., an Italian manufacturer of the merchandise at issue, and Potter–Roemer Co., a principal importer of the merchandise. Plaintiffs challenge Commerce's resort in the contested review to the "Best Information Available" ("BIA") methodology for calculating the alleged dumping margin of Giacomini's products in the United States market during the time period covered by the contested review. Specifically, plaintiffs have sought both at the administrative level and before this Court to refute the charge made by Commerce that Giacomini's responses to various of Commerce's inquiries during the review were deficient; concomitantly, plaintiffs challenge Commerce's use of BIA in response to those alleged deficiencies as being punitive, arbitrary, and unsupported by substantial evidence in the administrative record.

After this litigation had been underway for some time, Commerce conceded that it had indeed erred in most (four out of five) of the respects alleged by plaintiffs. Defendant maintains that Commerce's recourse to BIA was justified nevertheless, as it argues that Giacomini did not respond satisfactorily to Commerce's request (the fifth at issue here) for information to be used in deriving a "constructed value" for certain of Giacomini's exports to the United States. While defendant now agrees that a remand is warranted in the light of the errors conceded to have been made by Commerce, it argues that the Court should not overrule Commerce's resort to BIA, given its argument that that resort was justified in response to the fifth alleged deficiency, in Giacomini's submissions on constructed value. Plaintiffs argue that Commerce erred in this fifth respect just as in the other four. Plaintiffs ask the Court to set aside the results of the second review in their entirety and remand this matter to Commerce for further proceedings.

The Court finds that the various allegations of deficiency made by Commerce in the agency proceedings—those which Commerce has subsequently abandoned as well as those which it pursues here—are so intertwined as to prevent the Court from separating them and from appraising the propriety of Commerce's resort to BIA solely on the basis of the fifth alleged deficiency, in isolation from the other four. Consequently, this action must be remanded to Commerce for both a recalculation of the duty rates involved and a redetermina-

---

1. The original antidumping order, issued in 1985, is published at 50 Fed.Reg. 8354 (1 March 1985); the contested administrative review is published at 52 Fed.Reg. 36,813 (1 October 1987).

tion of whether, in the light of the errors conceded to have been made by Commerce, it is necessary and warranted to use the Best Information Available mechanism for deriving the constructed value of those merchandise models at issue which were valued on that basis, or whether sufficient information has been provided by Giacomini from which such a value can be constructed.

## BACKGROUND

If merchandise is imported into the United States for sale at a price (the "United States price") less than the "foreign market value" of that merchandise as defined by statute (*i.e.*, if the merchandise is "dumped" in the U.S. market) and injury to an American industry is caused or threatened by the dumping, antidumping duties may be levied against the imports to offset the price differential or "dumping margin". 19 U.S.C. § 1673 (1990). In its initial investigation concerning the imports at issue here, Commerce determined that Giacomini had dumped those products at a margin of 6.74 percent and an antidumping duty was applied at that rate against the imports. In the first annual administrative review of that order and of Giacomini's sales, for the period from 10 July 1984 through 28 February 1986, no dumping was found and the antidumping duty rate therefore was reduced to zero. During the second review, challenged in this action and covering the period from March 1986 through February 1987, Commerce concluded that Giacomini's responses to questionnaires were inadequate; consequently resorting to what it characterized as the best information available, Commerce set the new dumping margin for Giacomini at 85.54 percent, the dumping rate found in the first review for resales of Giacomini's products in the United States by a non-related European company, Ganbrook, Ltd. No review was conducted for the period from March 1987 through February 1988, and in the most recent review—for the period from March 1988 through February 1989—Commerce found a dumping rate of 4.51 percent.

When Giacomini challenged the preliminary results of the second review at the agency level, Commerce affirmed those preliminary results in all respects and adopted them in its final determination.[2] Thereafter plaintiffs commenced a challenge of those results in this Court. The Court granted a consent order temporarily enjoining liquidation of the products at issue but denied plaintiffs' request for a temporary injunction of the collection of cash deposits at the 85.54 percent rate.

In support of its resort to BIA, Commerce cited five alleged deficiencies in Giacomini's responses to Commerce questionnaires:

1. Failure to provide a "narrative" on certain variables listed in Giacomini's submission concerning its Canadian and U.S. export prices;

2. Failure to provide model match information for Canadian sales of each product model sold by Giacomini in the United States;

3. Failure to explain why some shipment dates preceded sale dates in Giacomini's submission of sales data;

4. Failure to provide information on differences between direct costs (of materials, direct labor, and factory overhead) of products exported to the United States and those exported to Canada.

5. Failure to supply adequate information on the costs of production for certain items that Giacomini exported to the United States but did not sell in its home or third-country markets, to enable Commerce to construct a value of those products.

These allegations are addressed in order. First, Commerce faulted Giacomini for failing to respond to a request for a "narrative" explaining a "variable" said to have been listed in Giacomini's Canadian and U.S. sales data and expressed by Commerce as follows:

| | |
|---|---|
| pertpay 1 | paydatt 1 |
| pertpay 2 | paydatt 2 |
| pertpay 3 | paydatt 3 |
| pertpay 4 | paydatt 4. |

---

**2.** Fed.Reg. 40,155 (29 September 1989).

Perplexed by this rather arcane jargon and after unsuccessfully seeking clarification of the request, Giacomini finally reported that it was unable to respond. Subsequently it has been discovered that the abbreviations "pertpay" and "paydatt" were concocted by Commerce's own personnel, not by Giacomini; at the time it requested information on those variables and held Giacomini delinquent for failing to explain them, Commerce did not realize that the mystery was of its own creation. Commerce now concedes its error with regard to this first alleged deficiency.

Second, Commerce alleged that Giacomini failed to provide information that would show for the merchandise models it sold in the United States corresponding models that it sold in Canada. Giacomini responded on two occasions to Commerce's request for that information and its allegation that Giacomini's earlier response was deficient. Giacomini first informed Commerce that the information was contained in the company's previous responses, and subsequently the company provided the same information again. Commerce maintained that Giacomini's responses were inadequate in this regard but Commerce has since acknowledged that the information *was* contained in the company's response and that Commerce's allegations of deficiency were erroneous.

Third, Commerce enquired of Giacomini why in certain sales data listed by the company in a questionnaire response, the dates of shipment preceded the dates of sale. After investigating the matter, Giacomini responded by telex that the discrepancies were due to simple typographical errors and provided the correct dates. When Commerce nevertheless cited this reply as being deficient, plaintiffs speculated in its brief before this Court that Commerce had misplaced the reply, noting that the telex had only recently been added to the official record in this case by Commerce in a supplementary submission. Plaintiffs' Brief in Support of Judgment Under Rule 56.1 ("Plaintiffs' Brief") at 11, n. 7. Commerce has since conceded that it indeed erred here as well, and has abandoned its claim that Giacomini's reply was deficient in this regard.

Fourth, Commerce alleged that Giacomini failed to provide information on differences between direct costs of models the company sold in the United States and models it sold in Canada. Commerce requested that information in the part of its questionnaire concerning adjustments to the prices of third-country sales to compensate for any cost differences between U.S. and third-country models. In its questionnaire response Giacomini reported that the merchandise it sold in Canada was identical to that it sold in the United States and therefore that such adjustments were not necessary; the company did not provide information concerning cost differences because it responded that none existed. Commerce nevertheless persisted in demanding such information, stating that other information submitted by Giacomini "implied" that such differences did exist although not identifying the information supporting that implication. Again, however, Commerce has since recognized that it erred in this respect as well, and has acknowledged that the requisite information was in its possession all along.

Commerce having late in these proceedings admitted error in all the above respects and having now acceded to the need for a remand, the only issue remaining is what should be the nature of the remand, *i.e.*, what should be Commerce's mandate or task during its remand proceedings. The determination of this issue turns on the resolution of the fifth area of dispute between the parties. In its fifth allegation of inadequacy, Commerce asserted that Giacomini failed to provide sufficient information in response to inquiries concerning the "constructed value" of certain items that it exported to the United States but did not sell either in its home market or in third countries;[3] plaintiffs contend that

---

**3.** Eight of Giacomini's product models are subject to the challenged antidumping order. Defendant's brief ("Defendant's Memorandum in Partial Opposition to Plaintiff's Motion for Judgment Upon the Agency Record") at pages 2–3 suggests that with respect to three of the eight

Giacomini provided ample data from which Commerce could have derived a constructed value of the merchandise.

As a measure of the foreign market value of imported merchandise under the antidumping laws, Commerce first uses the price at which the merchandise is sold in the home markets of the exporting country. If there have been no such sales or if they have been of insufficient quantity in the relevant time period, Commerce uses the prices from sales of the merchandise by the exporter in foreign countries other than the United States. If that third-country-sales data is also insufficient, Commerce determines the foreign market value by the "constructed value" method, whereby Commerce itself constructs such a value by calculating the cost of producing the merchandise, adding to that amount sums for direct overhead costs and a standard profit margin, and making certain other adjustments as necessary. 19 U.S.C. § 1677b (1990). In calculating foreign market value Commerce may request from the exporter various information for use in its calculations. When an entity from which such information is requested "refuses or is unable to produce the information ... in a timely manner and in the form required, or otherwise significantly impedes an investigation," Commerce is authorized in making its determinations to "use the best information otherwise available" ("Best Information Available" or "BIA"). *Id.* § 1677e(c).

For certain models of merchandise exported by Giacomini to the United States but not to Canada, those in the fifth category, Commerce determined that the proper measure of foreign market value was constructed value and accordingly requested information from Giacomini to be used in calculating such a value. Defendant asserts that Giacomini's responses to those requests were inadequate, thus justifying Commerce's resort to BIA to determine the

constructed value of the four models; plaintiffs contend that Giacomini provided ample information from which Commerce could have performed its constructed value calculations and that Commerce therefore was unjustified in resorting to what it characterized as BIA. All parties appear to agree that on remand Commerce must recalculate the foreign market values of all the merchandise at issue in this action, and Commerce agrees that in recalculating foreign market value for the categories of merchandise as to which it admitted making the first four errors discussed above, it will not use the constructed value method. The controversy concerns the remand mandate for the fifth category of merchandise the foreign value of which was determined by the constructed value method, using BIA. Essentially, it is defendant's position that on remand Commerce should reconsider the rate of duty to be imposed on that category of merchandise using the best information available methodology, while plaintiffs contend that Commerce should be required to reconsider not just the duty rate but also the necessity of using BIA for that merchandise.

On April 12, 1988, Commerce requested from Giacomini information "concerning the cost of materials [for the fifth category products], including a complete listing of all materials used in the production of the products ... and the amounts of each material used to manufacture the products." Defendant's Memorandum In Partial Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record ("Opposition") at 10. Commerce also requested information on the purchase price of each material used in the production process, the purchases of materials from related parties, and the amount of waste and spoilage resulting from that process. *Id.* at 10–11. Concluding that Giacomini's responses were inadequate, Commerce resorted to BIA, using as such "best information" an 85.54 percent

models, Commerce was able to derive a foreign market value on the basis of Giacomini's U.S. and Canadian sales data, while with respect to the other five models that data was insufficient (and therefore the constructed value methodology was required) to derive the foreign market value. It is not clear from the administra-

tive record, however, that Commerce made formal findings as to which sales of which models could be valued using the third country sales and which could not, and there does not appear to be substantial evidence showing why only three models could be so valued.

dumping rate applied against a European reseller of Giacomini's products, Ganbrook, Ltd., in a previous administrative review.

Plaintiffs argue that Giacomini "provide[d] all appropriate data needed by Commerce to perform constructed value calculations." Plaintiffs' Brief in Support of Judgment Under Rule 56.1 ("Plaintiffs' Brief") at 19. Using as an example the data that Giacomini submitted on its Model A95 siamese fire hose connector,[4] plaintiffs seek to demonstrate the adequacy of their responses. For that model, Giacomini submitted amounts for each of the following: raw materials costs, indirect material cost, outside machining cost, labor cost, and internal machine operating cost. Defendant argues that Giacomini's responses were inadequate in that they do not provide an itemization and explanation of calculations of labor and materials costs for individual models, and that they do not indicate whether Giacomini purchased any materials from related parties as requested by Commerce's questionnaire. Defendant also states that Giacomini failed to provide any data pertaining to "selling, general, and administrative expenses ("SGA") and that Giacomini's responses repeatedly were untimely. Plaintiffs respond that the above data that Giacomini supplied, along with other general data concerning Giacomini's products, were sufficient information from which Commerce could derive a constructed value for the merchandise.

## LAW AND ANALYSIS

"Constructed value" is defined by 19 U.S.C. § 1677b(e)(1) as being the sum of the following:

(A) the cost of materials ... and of fabrication or other processing of any kind employed in producing such or similar merchandise ...;

(B) the amount of general expenses and profit equal to that usually reflected in sales of merchandise of the same class or kind ..., except that—

(i) the amount for general expenses shall not be less than 10 percent of the cost as defined in subparagraph (A), and

(ii) the amount for profit shall not be less than 8 percent of the sum of such general expenses and cost; and

(C) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise under consideration in condition, packed ready for shipment to the United States.

Commerce found the constructed value data submitted by Giacomini to be deficient principally with respect to the first element in the statute—the cost of materials, fabrication, and processing for the merchandise at issue. Although Giacomini did submit for the relevant products its costs of raw materials, indirect materials, outside and internal machining, and labor, Commerce deems those submissions inadequate because of its belief that they did not provide a sufficient "itemization" of materials costs or explanation of the calculation of fabrication costs. The statute refers to "the cost of materials [and] fabrication" of "such or similar merchandise" as that being appraised. It is not patently evident from that language what degree of itemization or specificity is required for materials costs data to be used in the constructed value calculation. Neither is it completely clear why a submission of the total costs of raw and indirect materials for a model should not suffice to show the "cost of materials" in the model within the meaning of paragraph (A) of the statute. On this question, defendant quotes at length from the brief of the original domestic petitioner in this action before the agency, Badger–Powhatan. The principal complaint in that argument seems to be the information supplied by Giacomini was not accompanied by sufficient supporting documentation:

Where, as here, there has not been verification [by Commerce, of the submitted information], and where [Com-

---

**4.** Plaintiffs state that the constructed value data submitted by Giacomini on each of the models under review is identical in nature, "with only the amounts of the various cost components differing". Plaintiffs' Brief at 19. Thus, plaintiffs characterize the Model A95 data as "an appropriate surrogate for all of Giacomini's constructed value data." *Id.*

merce] contemplates invoking 19 U.S.C. § 1677e(a)(3). [presumably meaning § 1677e(b)(3) ] [5] to omit verification, it is imperative that the questionnaire response itself be "self-verifying". That is, by providing invoices to support its material costs, by providing an explanation of its accounting system and methodology, and by listing the components of SG & A, the questionnaire response on its face can provide a basis for concluding that the data are adequate, without the need for on-site verification.

Opposition at 13.[6]

■ Whatever may be the validity of that statement, it does not appear critically relevant in the present action. There may or may not have been sufficient evidence on the record to corroborate the cost data submitted by Giacomini, but that is an entirely different consideration from the alleged inadequacy of the data itself: the latter consideration relates to the appropriateness or completeness of the data, the former to its *accuracy;* the quotation from Badger–Powhatan recited by the defendant confuses the two. Even admitting, *arguendo,* that Giacomini's cost figures were not accurate, it does not necessarily follow that aggregate cost figures for individual models such as were submitted by Giacomini here are inappropriate *per se* for showing the costs of materials and fabrication for the products. If verification is necessary, then it should be undertaken, but that is a different basis for rejecting Giacomini's data than the inadequacy of the data principally asserted here.

■ For a separate and independent reason, however, it is not possible to evaluate the reasonableness of Commerce's resort to BIA in the circumstances of this case. It appears to the Court that the resort to BIA resulted from an amalgam of perceived deficiencies in Giacomini's responses—the fifth alleged deficiency just discussed as well as those discussed earlier which were subsequently conceded by Commerce not to have been deficiencies at all. Additionally, there are the allegations of untimeliness of Giacomini's responses. It is not possible on the facts presented to separate out these various potential bases and judge the use of BIA solely on the basis of the constructed value issue. The record reflects that Commerce did not resort to BIA solely on the basis of that issue; therefore, for the Court to evaluate its resort to BIA solely on the basis of that controversy would be to pass on a determination that was not made. This is evident from defendant's argument that "Giacomini's repeated deficiencies and untimely submissions, as detailed above, resulted in Commerce's determination to use the "best information otherwise available". Opposition at 12. It is not discernable whether Commerce would have resorted to BIA solely on the basis of that issue if it had known at the time that the other alleged deficiencies were in fact its own mistakes. Further, it may be that some or all instances of Giacomini's untimeliness are more understandable if not justifiable in the light of Commerce's repeated requests for information which the company either had already provided or could not provide. Given these unfortunate circumstances the Court is not disposed to resolve doubts against the company.

Generally, judicial review of an administrative determination like the present one is to be based solely on the administrative record which underlay the determination at the time it was made. 19 U.S.C. § 1516a(a)(2) (1990); *e.g., Bethlehem Steel Corp. v. United States,* 5 CIT 236, 566 F.Supp. 346 (1983), *Melamine Chemicals,*

---

**5.** 19 U.S.C. § 1677e(b) provides:
[Commerce] shall verify all information relied upon in making—
(3) [an annual review like the one at issue in this case], if—
(A) verification is timely requested by an interested party ..., and
(B) no verification was made under this paragraph during the 2 immediately preceding [annual reviews] under that section of the same order, finding, or notice, except that this clause shall not apply if good cause for verification is shown.

**6.** The views of Badger–Powhatan are presented only by the defendant. Badger–Powhatan, after receiving notice of this action, has not intervened directly to participate and present its views.

*Inc. v. United States,* 2 CIT 113, 1981 WL 2484 (1981). To affirm or reverse Commerce's use of BIA based solely on the constructive value controversy would be to rule on a determination that was not made, using an artificially fragmented administrative record. To enable the Court properly to review the final determination in this case it is necessary that Commerce reconsider not only the dumping margin imposed but also the necessity for resort to BIA at all in the light of the circumstances discovered since the promulgation of that determination. Accordingly, this action is remanded to Commerce for a redetermination of the amount of the dumping margins, if any, for the products at issue, which determination shall include a reconsideration of necessity and appropriateness of using the BIA approach for any constructed value determinations.

## JUDGMENT ORDER

Upon consideration of the pleadings of the parties to this action, it is hereby

ORDERED that this action is remanded to the Department of Commerce for a recalculation, in accordance with this opinion, of the contested dumping margins, including, for those product models previously valued according to the constructive value method using the "best information available" approach, a redetermination both of the amount of dumping margin, if any, and the necessity for use of the "best information available" approach.

It is further ORDERED that Commerce make a preliminary determination in the above remand proceedings within 90 days of the date of this Order and that Commerce afford plaintiffs herein an opportunity to comment on the preliminary determination by filing a brief or otherwise; and it is further

ORDERED that Commerce make and file with this Court a final determination within 150 days of the date of this Order.