In re INTERACTIVE NETWORK, INC. SECURITIES LITIGATION.

No. C–95–0026.

United States District Court, N.D. California.

Nov. 18, 1996.

James Tullman, Weiss & Yourman, Los Angeles, CA, for plaintiff.

Joshua R. Floum, and Vincent L. Johnson, Legal Strategies Group, Emeryville, CA, Michele E. Rose, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for TCI defendants.

## ORDER

JENSEN, District Judge.

On October 30, 1996, the Court heard arguments on the TCI defendants' motion to dismiss Count I of the Third Amended Complaint. James E. Tullman appeared on behalf of the plaintiff class, Joshua R. Floum and Vincent L. Johnson appeared on behalf of the TCI defendants, Michele Rose appeared on behalf of the IN defendants. Having considered the arguments of counsel, the papers submitted, the applicable law, and the record in this case, the Court hereby GRANTS the TCI defendants motion to dismiss.

## I. BACKGROUND

A. *Factual Background and Procedural History*

Plaintiffs are the class of all persons who purchased the securities of Interactive Network, Inc ("IN") between May 16, 1994 and March 31, 1995 (the "Class Period"). The defendants can be broken down into two groups. The IN defendants consist of IN, a California-based company which designs, develops, markets and distributes interactive television and entertainment systems; Peter Sealey, at all relevant times the President and C.O.O. of IN; and David B. Lockton, at all relevant times the Chairman of the Board and C.E.O. of IN. The TCI defendants consist of TCI Communications, Inc., the largest cable operator in the United States; Tele–Communications, Inc., its functional equivalent; and Gary Howard, Vice President of TCI Programming and a member of IN's board until January 31, 1995.

In its Third Amended Complaint (TAC), filed with the Court on June 17, 1996, plaintiffs allege one count of violation of Section 10(b) of the Securities and Exchange Act and Rule 10b–5 promulgated thereunder and one count of violation of Section 20(a) of the Securities and Exchange Act. The allegations stem from IN's attempt to develop an interactive television service which would permit television viewers to play along with their favorite game shows, sporting events, and the like. The plaintiffs allege several series of wrongful acts.

First, the plaintiffs allege that defendants made false and misleading statements concerning IN's plans to begin a "national roll-out" of its interactive service. TAC at 10:11–12. The TAC states that beginning in May 1994 the defendants consistently stated that national roll-out would occur during 1994 despite their knowledge of the undisclosed fact that IN was "being adversely impacted by increased cost and flat demand for its products" which made a 1994 roll-out impossible. *Id.* at 18:11–13.

Second, the plaintiffs allege that even after announcing on September 27, 1994 that the roll-out would be delayed, the defendants continued to overstate the imminence of the roll-out. *Id.* at 18:25–19:1. Again, the plaintiffs allege that the defendants were aware of undisclosed adverse facts which would have made a national roll-out impossible. *Id.* at 21:3–23.

Third, the plaintiffs allege that defendants overstated the revenue that was being generated by IN's decision to rent interactive units to consumers rather than selling them at a loss as it had been doing previously. *Id.* at 22:16–19. These overstatements were allegedly belied by announcements on November 22, 1994 and March 31, 1995 which revealed sizeable losses and which led to large drops in share prices. *Id.* at 25:23–24, 26:14–21.

Fourth, and generally, the plaintiffs allege that the defendants "conditioned the market into believing that IN was on the verge of great success and profits." *Id.* at 28:8–10. Again, the March 31, 1995 announcement is used to rebut the veracity of the claims made by the defendants. *Id.* at 32:25–33:3.

TCI at all relevant times, owned between 25 percent and 37 percent of the outstanding common stock of IN. *Id.* at 7:7–12. Plaintiffs allege that this control gave TCI access to "confidential updates on IN's product development and finances" as well as a seat on IN's board. *Id.* at 34:21–23, 35:20–21. Plaintiffs allege that TCI was fearful that IN's services would be utilized by the phone companies with whom TCI was competing and that in an effort to prevent such efforts, TCI attempted to monopolize IN's attempts to obtain financing. *Id.* at 36:14–18.

On September 3, 1996, the TCI defendants filed a motion to dismiss the section 10(b) count from the complaint.[1] The TCI Defendants argue that the TAC fails to state a claim because the plaintiffs have failed to allege that the TCI defendants were responsible for any of the allegedly false and misleading information and because the plaintiff's theory on which they hope to recover, "group published information", is inapplicable to these defendants.

## B. *Legal Standard*

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether a plaintiff will prevail in the action, but whether she is entitled to offer evidence in support of her claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

In answering this question, the Court must assume that plaintiff's allegations are true and must draw all reasonable inferences in plaintiff's favor. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow plaintiff to develop her case at this stage of the proceedings. *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981).

If the Court chooses to dismiss the complaint, it must then decide whether to grant leave to amend. In general, leave to amend is only denied if it is clear that amendment would be futile and "that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987) (quoting *Broughton v. Cutter Laboratories,* 622 F.2d 458, 460 (9th Cir. 1980) (per. curiam)); *see Poling v. Morgan,* 829 F.2d 882, 886 (9th Cir.1987) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)) (futility is basis for denying amendment under Rule 15).

## II. DISCUSSION

The elements of a rule 10b–5 claim are: 1) a misrepresentation or omission of a material fact; 2) reliance; 3) scienter and 4) resulting damages. *Paracor Finance v. General Elec. Capital Corp.,* 79 F.3d 878, 884 (9th Cir. 1996). The TCI plaintiffs argue that the TAC is deficient in that it fails to attribute any of the alleged misrepresentations or omissions to the TCI defendants. While it is true that none of these statements were attributed to the TCI defendants, the question remains whether the TCI defendants can nonetheless be found responsible under either a failure to disclose theory or a group published information theory.

---

1. The TCI defendants also stated their intention, after further discovery, to challenge the other claim in the indictment.

### A. Duty to Disclose

■ Plaintiffs argue that although none of the misstatements alleged in the complaint are attributable to the TCI defendants, the TCI defendants are nonetheless liable under 10b–5 for failing to disclose material facts to the plaintiffs. Opposition at 11:4–7. In *Cady, Roberts & Co,* 40 S.E.C. 907 (1961) and later *Chiarella v. U.S.,* 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980) the S.E.C. and the Supreme Court established that rule 10b–5 not only bars fraudulent statements, but in some contexts requires disclosure of facts known to an insider. "[A] corporate insider must abstain from trading in the shares of his corporation unless he has first disclosed all material inside information known to him." *Chiarella,* 445 U.S. at 227, 100 S.Ct. at 1114.

It seems clear that TCI was in possession of insider information. Plaintiffs allege that "[d]uring the entire period of INN's growth and product development, TCI and its agents, including Howard were provided with regular confidential updates on INN's product development and finances." TAC at 104. These allegations must be taken as true for the purposes of this motion. *Usher,* 828 F.2d at 561.

However, plaintiffs have failed to allege that the TCI defendants traded in IN's stock during the class period. All of the transactions alleged in the TAC occurred prior to May 16, 1994, the opening date of the class period. Thus, although plaintiffs have sufficiently alleged that the TCI defendants were in possession of insider information, they have failed to allege that they used this information in connection with the sale of IN's securities.

Plaintiffs maintain, however, that the TCI defendants have a general duty to disclose even in the absence of insider trading. Plaintiffs fail to cite to a single case which would support their theory that an insider in possession of information not known to the general public must disclose its information. The only case cited by the plaintiff for this proposition, *Freedman v. Louisiana–Pacific Corp.,* 922 F.Supp. 377, 387–88 (D.Or.1996) held that a corporation had a duty to disclose material facts to the public in order to make

its earlier affirmative statements non-misleading. This is quite different from finding a general duty to warn potential stockholders of hidden dangers in the absence of affirmative misrepresentations. Thus, even reading the TAC in the light most favorable to the plaintiffs, plaintiffs' nondisclosure theory fails to state a claim upon which relief can be granted. Because it seems clear that there are no relevant transactions which would give rise to an action for failure to disclose, we need not consider the test enunciated in *Chiarella v. U.S.,* 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980) for determining whether shareholders owe a duty to disclose in a given transaction.

### B. Group Published Information

The Ninth Circuit has developed the group published information doctrine which it has described as follows:

> In cases of corporate fraud where false and misleading information is conveyed in prospectuses, registration statements, annual reports, press releases or other 'group-published information,' it is reasonable to presume that these are the collective actions of the officers. Under such circumstances, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations.

*Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1440 (9th Cir.1987). Subsequent decisions have extended the doctrine to cover not only officers but directors as well. *See, e.g., Blake v. Dierdorff,* 856 F.2d 1365, 1369 (9th Cir.1988). "The rationale for group pleading is that facts about fraud flowing from the internal operation of a corporation are peculiarly, and often exclusively, within the control of the corporate insiders who manage the parts of the corporation involved in the fraud." *In re Ross Systems Securities Litigation,* 1994 WL 583114, *5 (N.D.Cal.1994).

### 1. Howard

■ Defendant Howard maintains that the group publication standard applies only to inside directors, and that he, as an outside

director, is not liable. In determining whether or not an outside director is liable under the group publication doctrine, courts in this district have looked to whether the directors: "1) participated in the day-to-day management of the part of the company involved in the alleged fraud, or 2) had a special relationship with the corporation." *Stack v. Lobo,* 903 F.Supp. 1361, 1376 (N.D.Cal.1995) (citations omitted).

Here, plaintiffs have alleged that defendant Howard, due to his position on the IN board, was privy to "confidential proprietary information concerning IN, its operations, finances, financial condition, and product development." Courts in this district are split as to whether the possession of inside information is sufficient to merit the application of the group published information doctrine. *Compare In re Digital Microwave Corp Sec. Litig.,* 1992 W.L. 465486, *4 (N.D.Cal.1992) ("Plaintiffs have asserted that defendants were kept apprised of the daily operations of the company, through both oral and written reports, and were aware that false statements were being issued regarding [defendant corporation]'s financial condition.... Group pleading is, therefore, appropriate and adequate in this instance.") *with In re Gupta Corporation Securities Litigation,* 900 F.Supp. 1217 (N.D.Cal.1994) ("Conclusory allegations that an outside director had access to corporate documents ... do not demonstrate the day-to-day involvement with corporate affairs necessary to establish liability under the group pleading presumption.").

This split notwithstanding, however, it seems that the majority of the decisions in this district have not extended the group publication doctrine where plaintiffs merely allege that outside directors were privy to inside information. The plaintiffs can point to only two cases to support their position, one of which, *In re XOMA Corporation Securities Litigation,* 1991 WL 331487, 1991 U.S.Dist Lexis 20051 (1991), has been depublished.

The Court finds that a more persuasive argument can be made against extending the group published information doctrine to cover directors who merely possessed inside information. The group published information doctrine is a narrow exception to the general rule stated in Fed.R.Civ.P. 9(b) that allegations of fraud must be pled with particularity. *See, e.g., Wool,* 818 F.2d at 1440 ("a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations"). The doctrine was developed to relieve plaintiffs the burden of pleading exactly which members of an organization were responsible for publications of the organization in those circumstances where their access to information was particularly limited. *In re Ross,* 1994 WL 583114 at *5.

Extending the doctrine to cover outside directors who, while not involved in the day-to-day workings of a corporation, are privy to inside information does not merely make it easier for plaintiffs without information about the inner workings of an organization to defeat a motion to dismiss. Instead, it extends the group of possible defendants liable in 10b–5 cases beyond those who might be responsible for making the decision. This result seems inconsistent with the narrow purposes the Ninth Circuit stated in *Wool v. Tandem* and *Blake v. Dierdorff* when it created the doctrine.

Therefore, with regard to defendant Howard, defendants' motion to dismiss is hereby GRANTED. Plaintiffs are given leave to amend their complaint to plead circumstances which would permit this Court to infer that Howard was involved in the day-to-day affairs of IN.

### 2. Corporate TCI Defendants

While defendant Howard was a member of IN's board, none of the other TCI defendants (the "corporate TCI defendants") were either officers or directors of IN. Thus, the corporate TCI defendants can be liable under the doctrine of group publication only if the doctrine extends to shareholders as well as officers and directors. The Ninth Circuit has yet to rule on whether or not the group publication doctrine can be applied to shareholders, and courts in this district are split as

to the applicability of the doctrine to shareholders.

In *Strassman, et. al. v. Fresh Choice Inc.*, 1995 WL 743728, at *14, 1995 U.S.Dist. Lexis 19343, *38–39 (N.D.Cal.1995) the court held that the group publication doctrine can be applied to a venture capital firm shareholder where plaintiff can show that "the firm's agent participated in the preparation and dissemination of company documents containing misrepresentations." In *Klein v. King*, 1990 WL 61950, at *13, 1990 U.S.Dist. Lexis 5392, *34 (N.D.Cal.1990) the court held that group publication applies to outside directors or majority shareholders "upon a showing that there is a special relationship between the individual(s) and the corporation in question warranting such treatment. A good starting point in this analysis is whether or not these outside directors or majority shareholders would be considered 'control persons' of the corporation...." In *In re Gupta Corp. Securities Litigation*, 900 F.Supp. 1217, 1241 (N.D.Cal.1994) the court appeared to propose a single standard for directors, officers and shareholders: "Only defendants who are active in the day-to-day management and control of a company may be held liable under the group pleading presumption." Finally, in the Southern District of California, the court determined that "[defendant corporation] since it was not a director or officer but only a shareholder could not fall under the group publishing doctrine which courts have applied only to directors and officers." *Robbins v. Homestown Buffet, Inc.*, 1995 U.S.Dist. Lexis 17870, *15 (S.D.Cal.1995). Of these cases, only *Klein* found shareholders liable under a group publication doctrine.

In keeping with the argument made above that group published information is designed only to be a pleading device and not to be a hook on which to hang liability, the *Gupta* standard, that defendants are liable only if they are involved in day-to-day affairs, seems the most convincing. The *Gupta* standard is more faithful to the rationale of the group published information doctrine than either the decisions in *Robbins* and *Strassman* which put too great a burden on plaintiffs and the *Klein* decision which conflates control person liability and the group published information doctrine. Furthermore, the *Gupta* standard has the benefits of uniformity; if a defendant is involved in running the day-to-day affairs of a corporation, the group pleading presumption should apply equally to that person whether her title is officer, director, or shareholder.

Turning to the facts of this case, the plaintiffs have failed to plead circumstances sufficient to support a finding that the TCI defendants were involved in the day-to-day running of IN. While they have detailed in their complaint the financial arrangements between TCI and IN, and have stated that these arrangements led to TCI receiving a seat on IN's board, they have failed to show that TCI took an active role in IN's daily affairs. Plaintiffs may have alleged that the corporate TCI defendants had the capacity to participate in the day-to-day operations of IN, but they have failed to allege that they actually did so.

By way of comparison, in the *Gupta* decision, whose standard this Court is applying, the court determined that although the defendant Novell Corporation was a major shareholder with a representative on Gupta's board who signed allegedly fraudulent filings, was given advance copies of Gupta's financial statements and had the ability to correct allegedly false statements prior to their issuance, Novell was not held liable under the group published information doctrine. 900 F.Supp. at 1241–42. Those facts actually allege greater involvement by the defendant's agent than is alleged here, and yet the court decided to dismiss for failure to state a claim. We do the same.

Therefore, with regard to the corporate TCI defendants, Count 1 of the TAC is DISMISSED. Plaintiffs are given leave to amend their complaint to plead circumstances which would permit this Court to infer that the TCI defendants actually participated in the day-to-day affairs of IN.

### 3. Oral Statements

■ A number of the allegedly false statements complained of in the TAC were made orally by individual IN defendants. The TCI defendants in their motion to dismiss state

that the group publication doctrine cannot apply to oral statements. This is clearly true. *See, e.g., Gupta*, 900 F.Supp. at 1239–40; *In re Sunrise Technologies Securities Litigation*, 1992 WL 359636, at *4, 1992 U.S.Dist. Lexis 18213, *9 (N.D.Cal.1992). The purpose of the doctrine is to relieve plaintiffs the burden of proving the authorship of a writing. This problem of authorship does not arise with oral statements.

Even striking the oral statements from plaintiffs' TAC, however, there remain sufficient written statements to make out a case of securities fraud against the authors of those statements.[2] *See, e.g.*, TAC at 12:23–25 (discussing IN's Annual Report); at 14:22–25 (discussing 10–Q filed with the SEC). Thus, although plaintiffs are correct in their assertion that oral statements cannot be the basis for the invocation of the group published information doctrine, this alone is insufficient to merit a dismissal of the TAC.

### III. CONCLUSION

For the reasons stated above, the TCI defendants' motion to dismiss Count I of the TAC is GRANTED as to both defendant Howard and the Corporate TCI defendants. The plaintiffs are granted leave to amend their complaint to allege circumstances sufficient to permit an inference that the TCI defendants were involved in the day-to-day affairs of IN. The amended complaint shall be filed no later than December 13, 1996. A status conference will be held December 18, 1996 at 8:30 am.

IT IS SO ORDERED.

---

**2.** For the reasons stated above, however, plaintiffs have failed sufficiently to allege, even under the group published information doctrine, that the TCI defendants were the authors of these statements.