[No. H021077. Sixth Dist. Dec. 5, 2001.]

PAUL KAMEN et al., Plaintiffs and Appellants, v.
DALE R. LINDLY et al., Defendants and Respondents.

## COUNSEL

Milberg Weiss Bershad Hynes & Lerach, William S. Lerach, William S. Dato, Tor Gronborg; Spector Roseman & Kodroff and Robert M. Roseman for Plaintiffs and Appellants.

McCutchen, Doyle, Brown & Enersen, Dale E. Barnes, Jr., Karen L. Kennard and Jennifer L. Jonak for Defendant and Respondent Deloitte & Touche.

Wilson Sonsini Goodrich & Rosati, Terry T. Johnson, Rebecca A. Mitchells and Kent W. Easter for Defendant and Respondent Harry L. Dickinson.

Pillsbury Winthrop, Walter J. Robinson, Charles R. Ragan, Kevin M. Fong and Theodore K. Bell for Defendants and Respondents Dale R. Lindly, Carmelo J. Santoro, John C. Colligan and Robert P. Lee.

## OPINION

**MIHARA, J.**—At issue in this action is the applicability of Corporations Code[1] sections 25400 and 25500 to defendants who did not both 1) sell and/or offer to sell, or buy and/or offer to buy securities, and 2) make misleading statements for the purpose of inducing the purchase or sale of a security. We hold that a defendant must have engaged in both activities in order to be liable under section 25500.

### FACTUAL AND PROCEDURAL BACKGROUND

S3 Incorporated (S3 or company) supplies high-performance multimedia acceleration hardware and software for personal computers. Its stock is traded through the NASDAQ national market system. Defendants Carmelo J. Santoro, John C. Colligan, and Robert P. Lee were members of the company's board of directors. Defendant Harry L. Dickinson served as senior vice-president of sales after April of 1995. Defendant Dale R. Lindly served as S3's corporate controller prior to March 4, 1997, and chief financial officer after that date. Defendant Deloitte & Touche LLP (Deloitte) is a firm of certified public accountants that was engaged by S3 to provide accounting and auditing services.

---

[1]Unless otherwise indicated, all further statutory references are to the Corporations Code.

According to the consolidated amended class action complaint against S3 and various defendants, during the class period, S3, certain officers and directors of the company and Deloitte issued materially false financial statements for the interim quarters and fiscal year 1996 and for the first and second quarters of 1997. These statements overstated the company's revenues by over $58 million. The named defendants also made a series of materially false and misleading statements about S3's operations, products, future business prospects and the market in which S3 sells its products. As a result, the market price of the company's shares reached an all-time high of $23 per share in October of 1996.

At the same time, S3 insiders sold off more than 648,000 of their personally held S3 shares, with more than half of them selling 77 percent or more of their holdings at artificially inflated prices, for proceeds exceeding $10.7 million. The company was also able to successfully complete a $103.5 million convertible subordinated note offering.

S3 later restated its financial results for 1996 and the first two quarters of 1997. The company admitted that its financial reports for the affected quarters were materially false and prepared in violation of generally accepted accounting principles (GAAP). The company also admitted that it improperly and prematurely recognized millions of dollars of revenue on products shipped primarily to its international distributors. This revenue was recognized before these products were sold through to end-user customers in violation of GAAP and S3's own policy controlling the timing of revenue recognition. S3 admitted that revenue of between $40 and $70 million in sales to distributors had been improperly recognized. Shares of S3 stock fell to $7-11/32 the day following the announcement.

On November 7, 1997, plaintiffs, investors who bought S3 stock during the period between April 18, 1996, and November 3, 1997, filed a class action against S3 and various directors and officers of the company. On June 16, 1998, plaintiffs filed a consolidated class action against the same defendants and Deloitte. All of the defendants filed demurrers.

The trial court sustained selected demurrers. The demurrer by John Colligan, Robert Lee and Carmelo Santoro was sustained on the ground that these defendants were not alleged to have made any fraudulent statements or prepared any misleading documents. The demurrer by Dale Lindly was sustained on the ground that Lindly was not alleged to have sold any securities. The demurrer by Harry Dickinson was sustained on the ground that it was not alleged that Dickinson sold any stock after he made the alleged misrepresentations. The demurrer by Deloitte was sustained on the ground that the firm was not alleged to have sold any securities.

Plaintiffs elected not to amend the complaint, and judgment was entered in favor of Colligan, Lee, Santoro, Lindly, Dickinson, and Deloitte. This appeal followed.

## DISCUSSION

Plaintiffs contend that each defendant willfully "participated" in violating section 25400, as that term is used in section 25500. They maintain that in sustaining defendants' demurrers the trial court effectively read the word "participates" out of section 25500, requiring instead that each defendant be alleged to have independently violated section 25400 by personally making a false or misleading statement and by selling stock. Accordingly, they assert that the demurrers were improperly sustained. Although our Supreme Court has yet to address this issue (see *StorMedia, Inc. v. Superior Court* (1999) 20 Cal.4th 449, 461, fn. 13 [84 Cal.Rptr.2d 843, 976 P.2d 214]), we disagree with plaintiffs' position.

### Standard of Review

In reviewing the sufficiency of a complaint against a general demurrer, the trial court is guided by long-settled rules. It treats the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. It also considers matters that may be judicially noticed. Further, the court gives the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Regardless of the labels attached by the pleader to any alleged cause of action, the court examines the factual allegations of the complaint, to determine whether they state a cause of action on any available legal theory. (*Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 947 [36 Cal.Rptr.2d 360].)

On appeal, plaintiffs bear the burden of demonstrating that the trial court erroneously sustained the demurrer as a matter of law. This court reviews the complaint de novo to determine whether it alleges facts stating a cause of action under any legal theory. Because a demurrer tests the legal sufficiency of a complaint, plaintiffs must show the complaint alleges facts sufficient to establish every element of each cause of action. If the complaint fails to plead, or if the defendants negate, any essential element of a particular cause of action, this court affirms the sustaining of the demurrers. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 [96 Cal.Rptr.2d 354].)

### Seller or Purchaser Requirement

"Corporations Code section 25400, a part of the Corporate Securities Law of 1968 (Corp. Code, § 25000 et seq.), provides that it is unlawful

in this state to make false statements or engage in specified fraudulent transactions which affect the market for a security when done for the purpose of inducing purchase or sale of the security or raising or depressing the price of the security. In short, it prohibits market manipulation. Section 25500 creates a civil remedy for buyers or sellers of stock the price of which has been affected by the forms of market manipulation proscribed by section 25400." (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1040 [80 Cal.Rptr.2d 828, 968 P.2d 539] (*Diamond Multimedia*), fns. omitted.)

The instant complaint purports to state a cause of action under section 25400, subdivision (d) which provides in relevant part: "It is unlawful for any person, directly or indirectly, in this state: [¶] . . . [¶] . . . If such person is a . . . person selling or offering for sale or purchasing or offering to purchase the security, to make, for the purpose of inducing the purchase or sale of such security by others, any statement which was, at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, or which omitted to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and which he knew or had reasonable ground to believe was so false or misleading." Section 25400 defines the proscribed conduct, but does not create a private right of action that gives rise to civil liability.

Section 25500 creates the private right to action and establishes the circumstances under which a person who has engaged in the conduct proscribed by section 25400 may be held liable for damages. The statute proves that "[a]ny person who willfully participates in any act or transaction in violation of Section 25400 shall be liable to any other person who purchases or sells any security at a price which was affected by such act or transaction for the damages sustained by the latter as a result of such act or transaction."

Plaintiffs first assert that because the word "participates" is clear, we should not indulge in judicial construction. (*Diamond Multimedia, supra,* 19 Cal.4th at p. 1047.) They maintain that the plain meaning of "participates" is "to take part" or "join or share with others." They conclude that if the Legislature's intent in enacting section 25500 was to limit civil liability to persons who directly violated section 25400 by both making the false statement *and* engaging in market activity, the Legislature would not have used the word "participates."

Plaintiffs fail to take into consideration that Corporations Code sections 25400 and 25500 are modeled on subsection (a) and subsection (e) of section

9 of the Securities Exchange Act of 1934 (15 U.S.C. § 78i(a) & (e)). (1 Marsh & Volk, Practice Under the California Securities Laws (2001) § 14.05[1], p. 14-47 (Marsh and Volk).)[2] Indeed, the language of Corporations Code section 25500 precisely parallels the language in section 9, subsection (e) of that act.[3]

It is important to point out that the five subdivisions of section 25400 deal with various types of activity designed to manipulate the market price of a security, which were common during the so-called pool operations in the 1920's. (1 Marsh & Volk, *supra*, § 14.05[2][c], p. 14-48.) Thus, it is reasonable to believe that the word "participates" in section 25500 extends liability to all the participants in these pools. For instance, section 25400, subdivision (a) prohibits "wash sales," i.e., the entering of purchase and sale orders of equal amounts in order to create the appearance of active trading and raise or depress the price of a security. Subdivisions (c) and (e) deal with "tipster sheets" where either a broker-dealer or other person engaged in the pool operations, or a third person employed by the principals, disseminates information that the price of a security will rise or fall because of the market operations of the pool. (1 Marsh & Volk, *supra*, § 14.05[2][c], pp. 14-48 to 14-49.)

■ Where, as here, California law is modeled on federal laws, federal decisions interpreting substantially identical statutes are unusually strong persuasive precedent on construction of our own laws. (*Building Material & Construction Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 658 [224 Cal.Rptr. 688, 715 P.2d 648]; *Holmes v. McColgan* (1941) 17 Cal.2d 426, 430 [110 P.2d 428].) In the absence of California cases that address the issue at bench, we look to federal cases.

■ Federal courts that have considered civil liability under subsection (a)(4) of section 9 of the Securities Exchange Act of 1934, on which Corporations Code section 25400, subdivision (d) was based, have concluded that the federal statute imposes civil liability only on "sellers" of securities. (See, e.g., *Gulf Corp. v. Mesa Petroleum Co.* (D.Del. 1984) 582

---

[2]"Professor Harold Marsh, Jr., was the reporter for the committee that drafted the California Corporate Securities Law of 1968, which includes sections 25400 and 25500. Robert H. Volk was Commissioner of Corporations at that time." (*Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1103, fn. 10 [23 Cal.Rptr.2d 101, 858 P.2d 568].) As a result, courts afford great deference to their treatise when interpreting California securities law.

[3]Section 9, subdivision (e) of the Securities Exchange Act of 1934 provides as follows: "Any person who willfully participates in any act or transaction in violation of subsections (a), (b), or (c) of this section, shall be liable to any person who shall purchase or sell any security at a price which was affected by such act or transaction, and the person so injured may . . . recover the damages sustained as a result of any such act . . . ." (15 U.S.C. § 78i(e)).)

F.Supp. 1110, 1122 [Securities Exchange Act § 9(a)(4) "appl[ies] only to a . . . 'person selling or offering for sale or purchasing or offering to purchase' a security"]; *Robbins v. Banner Industries, Inc.* (S.D.N.Y. 1966) 285 F.Supp. 758, 761 [Securities Exchange Act § 9(a)(4) "requires that the misleading information be made by the purchaser to the seller or vice-versa"].)

Plaintiffs rely on *Hokama v. E. F. Hutton & Co. Inc.* (C.D.Cal. 1983) 566 F.Supp. 636 to support their position that liability under section 25500 is not limited to direct violators of section 25400. In *Hokama*, the plaintiffs alleged a cause of action against a defendant for a violation of section 25500. The defendant asserted that section 25500 imposes liability only on persons who themselves violate section 25400. The district court disagreed. It reasoned as follows: "In contrast to the immediately subsequent sections of the Code, which impose civil liability only on direct violators, see Cal.Corp.Code §§ 25501-25503, section 25500 imposes liability on any person who 'participates' in a violation. Absent California authority indicating otherwise, the Court concludes from this difference in statutory wording that liability under section 25500 is not limited to direct violators of section 25400." (*Hokama*, at p. 648.)

We disagree with the reasoning of *Hokama*. First, Corporations Code section 25501 et seq. is modeled upon section 12(2) of the Securities Act of 1933 rather than on section 9 of the Securities Exchange Act of 1934. (1 Marsh & Volk, *supra*, § 14.03[1], [3]a, [4]a, pp. 14-20 to 14-23.) Second, *Hokama* ignores Corporations Code sections 25504[4] and 25504.1,[5] which specifically impose liability not only on the buyer or seller of a security but on controlling persons, associates and agents as well as aiders and abettors. These statutes indicate that the Legislature knows how to establish secondary liability when it wants to do so, yet failed to do so with respect to Corporations Code section 25400. Third, *Hokama* is the sole federal case

---

[4]Section 25504 provides: "Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."

[5]Section 25504.1 provides: "Any person who materially assists in any violation of Section 25110, 25120, 25130, 25133, or 25401, or a condition of qualification under Chapter 2 (commencing with Section 25110) of Part 2 of this division imposed pursuant to Section 25141, or a condition of qualification under Chapter 3 (commencing with Section 25120) of Part 2 of this division imposed pursuant to Section 25141, or an order suspending trading issued pursuant to Section 25219, with intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation."

that reached this conclusion. Other federal courts have concluded that Corporations Code sections 25400 and 25500 apply only to defendants who were engaged in market activity at the time of the misrepresentations. (See, e.g., *Reiger v. Altris Software, Inc.* (S.D.Cal. 1999) Fed.Sec.L.Rep. (CCH) ¶ 90,491 [Corp. Code, § 25500 "was not intended to reach defendants who did not *directly* participate in the sale of securities or some other 'market activity' "]; *In re Activision Securities Litigation* (N.D.Cal. 1985) 621 F.Supp. 415, 422 [Corp. Code, §§ 25400 and 25500 apply only to sellers]; *Hudson v. Capital Management Intern., Inc.* (N.D.Cal. 1983) 565 F.Supp. 615, 628 [same].)

*Hokama* also appears to contradict the view expressed by Marsh and Volk. In their treatise, the authors indicate that with the exception of subdivision (e) of section 25400 dealing with runners who distribute "tipster sheets," under each of the other subdivisions of the statute the defendant must be engaged in market activity in order to be liable. Subdivision (d) expressly requires that the defendant be either " 'a broker-dealer or other person selling or offering for sale or purchasing or offering to purchase the security.' " (1 Marsh & Volk, *supra*, § 14.05[4], p. 14-53.)

Plaintiffs also rely on *Pinter v. Dahl* (1988) 486 U.S. 622 [108 S.Ct. 2063, 100 L.Ed.2d 658], for the proposition that unlike the narrow seller requirement in section 12 of the Securities Act of 1933, section 9 of the 1934 Securities Exchange Act contemplated broader liability to collateral "participants" in a sale. In *Pinter*, the Supreme Court considered whether the "seller" requirement imposed by section 12 of the Securities Act of 1933 could be satisfied by allegations that a defendant substantially participated in a sale of securities. The court found no support in the statutory language or legislative history for expanding liability beyond the seller of the security. (*Pinter v. Dahl, supra*, at p. 650 [108 S.Ct. at pp. 2079-2080].) In reaching this decision, the court noted that Congress was aware of the collateral participation concept and employed it in such legislation as section 9 of the 1934 Securities Exchange Act, more specifically in 15 United States Code section 78i(e). (*Pinter v. Dahl, supra*, at p. 650, fn. 26 [108 S.Ct. at p. 2080].)

*Pinter* is no longer good law to the extent that it conflicts with *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.* (1994) 511 U.S. 164 [114 S.Ct. 1439, 128 L.Ed.2d 119] (*Central Bank*). In that case, the high court looked at the question of whether private civil liability under section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j) extends as well to those who do not engage in the manipulative or deceptive practice, but who aid and abet the violation. In addressing the issue, the court looked at private causes of action in both the 1933 Securities Act and 1934 Securities Exchange Act, and specifically reviewed section 9 of the 1934 act.

The court concluded that "none of the express causes of action in the 1934 Act further imposes liability on one who aids or abets a violation." (*Central Bank*, at p. 179 [114 S.Ct. at p. 1449].)

In light of the vast majority of federal cases that have construed section 9 of the Securities Exchange Act of 1934 and Corporations Code sections 25400 and 25500, we conclude that civil liability pursuant to Corporations Code section 25500 applies only to a defendant who is either a person selling or offering to sell or buying or offering to buy a security. Since it was never alleged that defendant Lindly or Deloitte ever sold or offered to sell S3 stock, plaintiffs failed to state a cause of action against these defendants.

With respect to defendant Dickinson, plaintiffs concede that he did not sell any S3 stock after March 1997. Therefore, having made the allegedly false statements after he sold his shares, he could not have made the misrepresentations "for the purpose of inducing the purchase . . . of such security by others," as contemplated by section 25400. (See *StorMedia, Inc. v. Superior Court, supra*, 20 Cal.4th at p. 461, fn. 13 ["The unlawful conduct is the making of false and misleading statements for the purpose of inducing the purchase or sale of a security which the defendant is selling, offering to sell, purchasing, or offering to purchase."].)

*Misleading Statement Requirement*

Relying on Abrams, *The Scope of Liability Under Section 12 of the Securities Act of 1933: "Participation" and the Pertinent Legislative Materials* (1987) 15 Fordham Urb. L.J. 877, 932 (Abrams),[6] plaintiffs assert defendants Santoro, Colligan and Lee "participated" in a violation of section 25400. Their participation is based on the allegations that defendants signed a public report that was alleged to be false and misleading. As members of S3's audit committee, these defendants directed the preparation of the company's financial statements and are alleged to have participated in the decision to prematurely recognize the revenue that made the financial statements false. Plaintiffs maintain that by so doing they acted jointly with each other, with other individual defendants, with Deloitte, and with S3 to violate section 25400, subdivision (d). By signing the form 10-K, at a minimum they performed a "mechanical activity" in an illegal act by S3, i.e., the filing of the false 10-K report with the SEC (Securities and Exchange Commission). There is no merit to this assertion.

We first observe that the law review article, which was cited in *Pinter* in footnote 26 (*Pinter v. Dahl, supra* 486 U.S. at p. 650, fn. 26 [108 S.Ct. at

---

[6]The law review article identified section 25500 as one of 19 state securities statutes that expressly impose "participant" liability. (Abrams, *supra*, 15 Fordham Urb. L.J. at p. 927, fn. 294.)

p. 2080]), was written prior to the United States Supreme Court's decision in *Central Bank, supra,* 511 U.S. 164. Thus, the article's usefulness is limited.

"Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), provides for derivative liability of persons who 'control' those who are primarily liable under the Exchange Act.[7] However, control persons may escape liability by proving that they acted in good faith with regard to the securities violation. *See* 15 U.S.C. § 78t(a). To determine whether the good-faith affirmative defense has been satisfied under section 20(a), defendants must show that they did not act recklessly. Negligence on the part of defendants is insufficient to establish liability." (*Dellastatious v. Williams* (4th Cir. 2001) 242 F.3d 191, 194.)

In *Howard v. Everex Systems, Inc.* (9th Cir. 2000) 228 F.3d 1057, the court was called upon to determine whether a director of the defendant corporation was liable under section 20(a) of the Securities Exchange Act of 1934. The court found that the plaintiff merely pointed to the director's general level of control but provided no specific indication that he had supervised or had any responsibility for the preparation of the financial statements. The court noted that although the plaintiff alleged that the director had "reviewed and approved" financial statements as a member of the board, "such activity does not rise to a level of supervision or participation sufficient for a § 20(a) violation. Although ownership of stock and a position as a Board member are relevant to ascertaining control, here, there is no showing that [the director] was active in the day-to-day affairs of [the defendant corporation] or that he exercised any specific control over the preparation and release of the financial statements." (*Howard v. Everex Systems, Inc., supra,* at p. 1067, fn. 13.)

Similarly, in *Stack v. Lobo* (N.D.Cal. 1995) 903 F.Supp. 1361, the court found that the plaintiffs had not adequately pled a cause of action against certain directors of the corporation. As the court stated, "Ordinarily, outside directors are not involved in a corporation's day-to-day affairs. Thus, the group pleading doctrine[8] may be invoked as to outside directors only if they: 1) participated in the day-to-day management of the part of the

---

[7]Title 15 United States Code section 78t(a) provides as follows: "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."

[8]"The Ninth Circuit has developed the group published information doctrine which it has described as follows: 'In cases of corporate fraud where false and misleading information is conveyed in prospectuses, registration statements, annual reports, press releases or other

company involved in the alleged fraud, . . . , or; 2) had a special relationship with the corporation. [Citations.] [¶] Plaintiffs' allegations against Antle, Caufield and Harding are not adequately pled. There are no allegations in the SAC that any of the three participated in the day-to-day management of Quickturn. Rather, the SAC alleges that each of them 'signed Quickturn's Prospectus, as well as its 1993 Report on Form 10-K filed with the SEC.' . . . However, an outside director does not become liable for the contents of a group published document merely by signing it." (*Id.* at p. 1376, citations omitted.)

In the present case, plaintiffs failed to allege that Santoro, Colligan and Lee either participated in the day-to-day management of S3 or had a special relationship with the company. Accordingly, the trial court was correct in sustaining their demurrer.

### DISPOSITION

The judgment is affirmed.

Premo, Acting P. J., and Elia, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 13, 2002.

---

"group-published information," it is reasonable to presume that these are the collective actions of the officers. Under such circumstances, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations.' [Citation.] Subsequent decisions have extended the doctrine to cover not only officers but directors as well. [Citation.] 'The rationale for group pleading is that facts about fraud flowing from the internal operation of a corporation are peculiarly, and often exclusively, within the control of the corporate insiders who manage the parts of the corporation involved in the fraud.' " (*In re Interactive Network, Inc. Securities Litigation* (N.D.Cal. 1996) 948 F.Supp. 917, 920.)