Filed 8/25/14;  pub. order 9/23/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT C. FLEET et al., | |
| Plaintiffs and Appellants, | G050049 |
| v. | (Super. Ct. No. CIVRS1204737) |
| BANK OF AMERICA N.A. et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Joseph R. Brisco, Judge.  Affirmed in part and reversed in part.

Robert C. Fleet and Alina O. Szpak-Fleet, in pro. per., for Plaintiffs and Appellants.

McGuireWoods, Leslie M. Werlin and Blake S. Olson for Defendants and Respondents.

# INTRODUCTION

This appeal represents another example of what is becoming a well established and predictable pattern. A homeowner in distress because of the meltdown of the financial markets applies to a lender for mortgage relief. The lender approves the homeowner's participation in a government-funded program meant to lower mortgage payments and avoid foreclosure. The homeowner tries to comply with the terms of the mortgage modification program. He or she contacts the lender to make sure everything is proceeding according to plan and either receives assurances that it is or is passed from person to person, each of whom professes to know nothing about the loan in question or its modification. Sometimes both. Then the foreclosure notice is posted on the door, and the house is sold.

Robert and Alina Fleet, appellants in this case, alleged just such a pattern in their first amended complaint against respondent Bank of America (BofA). Because they are representing themselves, their complaint is not in the form to which courts are accustomed.[1] Nevertheless, allegations of viable causes of action can be sufficiently discerned to defeat a demurrer. We therefore reverse the judgment dismissing their case against BofA and return them to the trial court for further proceedings.

# FACTS[2]

The Fleets owned a house in Montclair. They obtained a mortgage loan from BofA in 2004. They applied to have their loan modified in 2009 under the Making Homes Affordable Act. Then began month after month of telephone conversations with and letters to various BofA-related personnel, who either (a) assured the Fleets that

---

[1] The trial court sustained BofA's demurrer to the Fleets' original complaint and told the Fleets they had to plead with more specificity. The Fleets evidently took this admonition to mean they had to try their case in their amended complaint. The result is a complex and fact-intensive document that requires concentration and dogged analysis. The Fleets' appellate brief demonstrates mastery of English but a natural – and commendable – unfamiliarity with legalese. This might be a good time to associate in someone who speaks that tongue.

[2] Because this appeal comes to us after a demurrer was sustained, we assume the truth of the facts pleaded in the first amended complaint. (See *Los Altos Golf & Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 203.)

everything was proceeding smoothly or (b) told the Fleets they had no knowledge of any loan modification application. Finally, in November 2011, BofA informed the Fleets they had been approved for a trial period plan under a Fannie Mae modification program. All they had to do, the Fleets were told, was to make three monthly payments of $957.43, starting on December 1, 2011. If they made the payments, then they would move to the next step – verification of financial hardship. If they passed that test, their loan would be permanently modified.

The Fleets made the first two payments, for December 2011 and January 2012. A BofA representative told them in December that BofA had received the December and January payments[3] and that foreclosure proceedings had been suspended. Toward the end of January 2012, their house was sold at a trustee's sale.

Two days after the sale, a representative of the buyer showed up at the house with a notice to quit. The Fleets informed him that the house had significant structural problems, and he said he was going to rescind the sale. The Fleets continued to try to communicate with BofA regarding the property. A BofA representative left voice mail messages to the effect that BofA wanted to discuss a solution to the dispute, but otherwise it appeared that productive conversation between the Fleets and BofA and between the Fleets and the buyer had ceased. In light of this silence – which they interpreted to mean the buyer was trying to rescind the sale – the Fleets spent $15,000 to repair a broken sewer main, which was leaking sewage onto the front lawn. They were evicted in August 2012.

In June 2012, the Fleets sued BofA, the trustee under their deed of trust, BofA officers and some of the employees who had been involved in handling their loan modification (the BofA defendants), and the buyer of the property and its representative. In August, the trial court sustained BofA's demurrer with leave to amend as to some of

_____
[3] The Fleets had sent BofA checks totaling $2,385 in December, which checks covered the trial period plan payments for December 2011, January 2012, and part of February 2012.

the causes of action and without leave as to others.  The Fleets filed an amended complaint in September.  BofA's demurrer to the first amended complaint was sustained without leave to amend as to the remaining causes of action – promissory estoppel, breach of contract, fraud, and accounting.[4]  Judgment was entered on December 17, 2012, dismissing all of the BofA defendants.[5]

## DISCUSSION

**I.          Standard of Review**

On appeal from a judgment of dismissal following the sustaining of a demurrer without leave to amend, we review the complaint to determine whether it alleges facts to state a cause of action under any legal theory, regardless of the labels attached to the causes of action in the complaint itself.  (*Kamen v. Lindly* (2001) 94 Cal.App.4th 197, 201.)

As stated above, this case falls into line with a number of cases in which a homeowner has been promised a mortgage modification under a program designed to forestall foreclosure only to find the notice thereof posted on the door.  The kindest interpretation to place on this scenario is lender incompetence – the left-hand loan modification department and the right-hand foreclosure department appear to be operating in total ignorance of each other.  This is the most likely explanation, given the size of the institutions involved, but it is not the only one, and as the numbers of such cases grow, other less benign explanations are coming to more and more minds.  (See

---

[4]          The Fleets alleged three causes of action against the BofA defendants – intentional default, false information, and fraud – that the trial court correctly characterized as variations of a fraud claim.  We have considered these three causes of action as stating a cause of action for promissory fraud against BofA and a cause of action for fraudulent misrepresentation against three individual BofA defendants.

[5]          Although the minute order dismissed the case *without* prejudice, the judgment prepared by BofA's counsel and signed by the court stated that the action was dismissed *with* prejudice.

On its own motion, the court also ordered the dismissal of three unserved defendants.  Since the complaint was only six months old at that point, this dismissal was clearly erroneous.  (See Code Civ. Proc., § 583.420.)  No judgment was entered in favor of these defendants, which included the buyer of the home, Life Strategy Group, LLC, and its representative, Rudy Morales.

4

*Corvello v. Wells Fargo Bank, NA* (9th Cir. 2013) 728 F.3d 878, 885 (conc. opn. of Noonan, J.)

One such case comes from our court – *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780 (*West*).  The homeowner, West, defaulted on her loan, and a notice to sell was recorded.  The lender then informed her by letter that she had been approved for a trial period plan.  The letter stated that if she complied with the terms of the agreement, the bank would "'consider a permanent workout solution'" to her mortgage problems.  (*Id.* at pp. 788-789.)  West made all three payments required by the trial period plan and kept on making them even after the three months had expired.  About eight months later, the lender told her that she did not qualify for a loan modification because she did not meet a formula developed by the Treasury Department.  The lender offered to let her see its work, and if any calculations were wrong it would conduct a new evaluation.  West duly notified the lender that the calculations were wrong, and, during a conference call, the lender asked her to resubmit her financial data and assured her that no foreclosure sale pending.  Two days later, the home was sold at a trustee's sale.  (*Id.* at pp. 789-790.)[6]

West appealed after the lender's demurrer was sustained without leave to amend (*West, supra,* at p. 791), and we concluded she had stated causes of action for fraud, breach of contract, promissory estoppel, and unfair competition.  (*Id.* at pp. 794, 795, 796, 805, 806.)  Other courts faced with similar fact patterns have come to the same conclusions.  (See, e.g., *Rufini v. CitiMortgage, Inc.* (2014) 227 Cal.App.4th 299, 306 and cases cited; *Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915 [breach of contract/implied covenant of good faith, promissory estoppel, fraud]; *Barroso v. Ocwen Loan Servicing, LLC* (2012) 208 Cal.App.4th 1001, 1014-1015 [breach of

---

[6]    Adding insult to injury, two days after the trustee's sale the lender sent West a letter inviting her to contact it to work out a solution to her mortgage difficulty.  About three months after that, West got a letter advising her of the availability of government-sponsored alternatives to foreclosure. (*West, supra,* 214 Cal.App.4th at pp. 790-791.)

contract, leave to amend to assert breach of covenant of good faith]; see also *Corvello v. Wells Fargo Bank, NA, supra*, 728 F.3d 878 [breach of contract, unfair debt collection].)

## II.        Breach of Contract/Covenant of Good Faith and Fair Dealing

The Fleets alleged that BofA approved them for a trial period plan under the Fannie Mae modification program. BofA sent them a letter dated November 15, 2011, confirming their entry into the program and setting out the "steps [they] need to take to permanently modify [their] mortgage, starting with making [their] first trial period payment." The letter informed the Fleets that they could accept the offer by making "new monthly Trial Period Plan payments in place of [their] normal monthly mortgage payments." The payments were identified as follows: "1st payment: $957.43 by 12/01/11 [¶] 2nd payment: $957.43 by 01/01/12 [¶] 3rd payment: $957.43 by 02/01/12." The letter further represented that "[a]fter all trial period payments are timely made and your financial hardship is verified, *your mortgage will be permanently modified* (italics added)." The letter warned the Fleets that they would continue to receive monthly statements based on their original mortgage, but they were to make trial period plan payments instead. The letter closed by congratulating the Fleets on being accepted to the Fannie Mae program and taking the first step toward permanently modifying their mortgage.

The Fleets alleged that they sent $2,385 to BofA on November 29, 2011, by checks, to cover the payments for the trial period, which checks BofA cashed.[7] The Fleets alleged that BofA removed the notice of foreclosure from real estate listings in mid-December 2011.

The Fleets' residence was sold to Life Strategy Group, LLC, at a trustee's sale on January 24, 2012, for $168,000.

---

[7]        This amount was enough to cover the first two payments, with about $470 left over.

6

"In addition to the duties imposed on contracting parties by the express terms of their agreement, the law implies in every contract a covenant of good faith and fair dealing. [Citations.] The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement. [Citations.] The precise nature and extent of the duty imposed by such an implied promise will depend on the contractual purposes." (*Egan v. Mut. of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818; see *Locke v. Warner Bros.*(1997) 57 Cal.App.4th 354, 363.)

According to the agreement alleged in the complaint and memorialized by the trial period plan letter, the Fleets were accepted into a program that would have led to a permanent modification of their mortgage. The first step of this program was timely payment of the three monthly amounts specified in the letter. They alleged they made two of the three payments, but before the third payment was due, BofA foreclosed, and the house was sold.

Foreclosing and selling the house injured the right of the Fleets to receive the benefits of the agreement, which, according to the letter, *guaranteed* a modification of the Fleets' mortgage if (1) they made timely payments according to the schedule set out in the letter and (2) their financial hardship was verified. They made two timely payments, or so they allege, but the sale of their house prevented further participation in the program. These allegations are sufficient to state a cause of action for breach of the covenant of good faith and fair dealing.

The trial court reasoned that the trial period plan agreement was not a binding loan modification agreement, and the Fleets had no right to any guaranteed loan modification. Although the trial court was correct that the trial period plan agreement was not itself a loan modification agreement, it was mistaken about the Fleets' rights. As we stated in *West, supra*, "'Where a borrower qualified for a [federal Home Affordable Mortgage Program (HAMP)] loan modification, the modification process itself consisted

7

of two stages. After determining a borrower was eligible, the servicer implemented a Trial Period Plan (TPP) under the new loan repayment terms it formulated using the waterfall method. The trial period under the TPP lasted three or more months, during which time the lender "must service the mortgage loan … in the same manner as it would service a loan in forbearance." [Citation.] After the trial period, if the borrower complied with all terms of the TPP Agreement – including making all required payments and providing all required documentation – and if the borrower's representations remained true and correct, *the servicer had to offer a permanent modification.* [Citation.]"'" (*West, supra*, 214 Cal.App.4th at p. 788, quoting *Wigod v. Wells Fargo Bank, N.A.* (7th Cir. 2012) 673 F.3d 547, 577.) The point of the TARP (Troubled Asset Relief Program), through which lenders obtained access to $50 billion in federal money, was to encourage lenders to restructure loans so that homeowners could avoid foreclosure. (*West, supra,* at pp. 786-787.) If they took TARP money, lenders had to follow Treasury Department guidelines for restructuring loans. They did not have the discretion to set their own criteria for handing out loan modifications.

The Fleets were on the road to a loan modification when BofA caused their house to be sold. They alleged that they performed the terms of the TPP agreement until they were excused by BofA's conduct. They have stated a cause of action for breach of contract against BofA.[8]

---

[8] The amended complaint named all of the BofA defendants as defendants in this cause of action. The Fleets have alleged facts showing an agreement only with BofA itself, so the demurrer was properly sustained without leave to amend as to the rest of the BofA defendants.

### III. Fraud

#### A. Promissory Fraud

Civil Code section 1710 defines one species of deceit as "[a] promise made without any intention of performing it." A cause of action for promissory fraud requires the plaintiff to allege that the promissor did not intend to perform at the time the promise was made, that the promise was intended to deceive and induce reliance, that it did induce reliance, and that this reliance resulted in damages. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 637; *Building Permit Consultants, Inc. v. Mazur* (2004) 122 Cal.App.4th 1400, 1414-1415.)

Although the Fleets' amended complaint spreads the fraud allegations over three causes of action and contains a great deal of extraneous information, it also alleges the requisite elements of promissory fraud. The Fleets allege that BofA never intended to modify their loan – notwithstanding the representations made in the TPP agreement and those made by the parade of BofA representatives who communicated with them – but rather intended to foreclose. The Fleets relied on the false promise by making payments under the TPP agreement and by refraining from taking other measures to save their home. They were damaged both by the loss of their home and by the loss of the money they expended jumping through hoops, running around in circles, and talking to walls in an effort to obtain the loan modification BofA had promised them, all the while unaware that BofA had no intention of modifying their loan. It may also turn out that the $15,000 they spent to fix the sewer is part of their damages. This cause of action may or may not be provable; what it definitely is not is demurrable.

#### B. Fraudulent Misrepresentation

The Fleets alleged their fraud claims not only against BofA but also against the other BofA defendants, i.e., the trust company and several employees who handled the loan modification. The allegations of the complaint support the liability of those defendants who were agents of BofA and participants in the fraud. """An agent or

employee is always liable for his own torts, whether his employer is liable or not."' [Citations.]  'In other words, when the agent commits a tort, such as … fraud …, then … the agent [is] subject to liability in a civil suit for such wrongful conduct.' [Citations.]" "'"[I]f a tortious act has been committed by an agent acting under authority of his principal, the fact that the principal thus becomes liable does not, of course, exonerate the agent from liability." … The fact that the tortious act arises during the performance of a duty created by contract does not negate the agent's liability.' [Citation.]" (*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 68; see Civ. Code, § 2343 [agent responsible as principal to third party when acts wrongful in their nature].)

Read liberally, as we are required to do when evaluating a demurrer, the allegations of the amended complaint support a fraud cause of action against three of the other BofA defendants – Sophia Williams, Neal Smith, and Kimberly Garnham.  All three are alleged to have assured the Fleets that the payments submitted per the TPP agreement had been received and credited and that the foreclosure proceedings had been suspended.  Smith and Garnham are alleged to have told the Fleets to ignore a demand for payment letter from the lawyers representing the trustee and the bills from BofA for past due amounts.  The Fleets have also alleged that these three defendants promoted the TPP agreement without any intention of honoring it.  The Fleets have adequately alleged a fraud claim against these three defendants.[9]

---

[9] The Fleets also name Brian Moynihan – identified as BofA's president and CEO – and Barbara Desoer – identified as president of BAC Home Loans – as defendants.  The Fleets have alleged no facts showing that either of these defendants had personal knowledge of or involvement in any promises or misrepresentations made to them.

10

## V.   Promissory Estoppel

The elements of a cause of action for promissory estoppel are (1) a promise, (2) the reasonable expectation by the promisor that the promise will induce reliance or forbearance, (3) actual reliance or forbearance, and (4) the avoidance of injustice by enforcing the promise. (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310.) A cause of action for promissory estoppel is a claim in equity that substitutes reliance on a promise for consideration "in the usual sense of something bargained for and given in exchange." (*Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 249.) If actual consideration was given by the promisee, promissory estoppel does not apply. (*Id.* at p. 250; see *Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 672-673; *Avidity Partners, LLC v. State of California* (2013) 221 Cal.App.4th 1180, 1209; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 275.)

Although a cause of action for promissory estoppel is inconsistent with a cause of action for breach of contract based on the same facts (see, e.g. *Money Store Investment Corp. v. Southern Cal. Bank* (2002) 98 Cal.App.4th 722, 732), "[w]hen a pleader is in doubt about what actually occurred or what can be established by the evidence, the modern practice allows that party to plead in the alternative and make inconsistent allegations." (*Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th

---

"'Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done. They may be liable, under the rules of tort and agency, for tortious acts committed on behalf of the corporation. [Citations.]' . . . '[I]t is well settled that corporate directors cannot be held *vicariously* liable for the corporation's torts in which they do not participate. Their liability, if any, stems from their own tortious conduct, not from their status as directors or officers of the enterprise. [Citation.] "[A]n officer or director will not be liable for torts in which he does not personally participate, of which he has no knowledge, or to which he has not consented. . . . While the corporation itself may be liable for such acts, the individual officer or director will be immune unless he authorizes, directs, or in some meaningful sense actively participates in the wrongful conduct.'" [Citation.]'" (*PMC, Inc. v. Kadisha* (2000) 78 Cal.App.4th 1368, 1379.) Accordingly, the demurrer to the fraud cause of action was properly sustained as to these two defendants.

  Likewise, the Fleets have not alleged any facts showing false promises or misrepresentations made to them by the trustee, Recon Trust Company. Accordingly, the demurrer to this cause of action as to this defendant was properly sustained.

11

1395, 1402; see also *Crowley v. Katleman* (1994) 8 Cal.4th 666, 690.) The Fleets have alleged facts that could support a cause of action for promissory estoppel against BofA in the event that they cannot establish a cause of action for breach of contract. Whether they can prove this cause of action awaits further development.

## V. Accounting

A cause of action for accounting requires a showing of a relationship between the plaintiff and the defendant, such a fiduciary relationship, that requires an accounting or a showing that the accounts are so complicated they cannot be determined through an ordinary action at law. (*Brea v. McGlashan* (1934) 3 Cal.App.2d 454, 460; 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 819, p. 236.) "An action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation. [Citation.]" (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179.)

The exact nature of the Fleets' accounting claim is obscure, but it appears to have two parts. First, the Fleets claimed BofA misapplied the loan payments they made from March 2010 through November 2011. Second, the Fleets alleged that there were "surplus" funds left over from the trustee's sale, although they did not allege that they were supposed to receive these funds.

The trial court sustained BofA's demurrer to this cause of action on the ground that the issue of the surplus funds from the trustee's sale had been resolved in a different case by a different judge. As part of its request for judicial notice, BofA filed a copy of the minute order in the other case, which denied the Fleets' motion for relief from an order to deposit surplus funds. It appears, then, that the trial court correctly ruled as to this part of the claim.

As to the part dealing with how the loan payments were applied before foreclosure, it appears this issue can be folded into the fraud and breach of contract causes of action. If the Fleets are maintaining that they overpaid BofA – either under the

12

TPP agreement or because of the fraudulent promise – the overpayment will constitute an element of their damages. If something else turns up in discovery, they can request leave to amend. As of now, however, they do not appear to have alleged the necessary elements of a separate cause of action for accounting.

**VI.**      **Leave to Amend**

The Fleets correctly point out that leave to amend is liberally granted after a demurrer is sustained. But they fail to acknowledge that, on appeal, the appellant has the burden of showing how the pleading can be amended to state a cause of action. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) They have not carried this burden. They have not explained to us how they could amend the causes of action that were properly dismissed without leave to amend to correct their deficiencies. Thus they have provided us with no basis by which we can conclude that the trial court abused its discretion when it denied leave to amend. (See *New Plumbing Contractors, Inc. v. Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088, 1098.)

We strongly advise the Fleets to engage counsel. Appellate review of the sustaining of a demurrer tilts heavily in favor of permitting a plaintiff to proceed on the merits, but that favorable atmosphere rapidly evanesces as the case proceeds. Obtaining counsel will help the Fleets to navigate the shoals ahead of them and give them a chance to litigate on equal terms with BofA.

## DISPOSITION

The judgment is reversed. The order sustaining the demurrer to the cause of action for fraud is reversed as to BofA and respondents Williams, Smith, and Garnham and affirmed as to respondents Recon Trust, Moynihan, and Desoer. The order sustaining the demurrer to the breach of contract cause of action is reversed as to BofA and affirmed as to the other respondents. The order sustaining the demurrer to the cause of action for promissory estoppel is reversed as to BofA and is affirmed as to the other

13

respondents.  The order sustaining the demurrer to the cause of action for accounting without leave to amend and the dismissal of this cause of action is affirmed.  Appellants will recover their costs on appeal.


                                                            BEDSWORTH, J.
WE CONCUR:


RYLAARSDAM, ACTING P. J.


FYBEL, J.

14

Filed 9/23/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT C. FLEET et al., | |
|    Plaintiffs and Appellants, | G050049 |
|       v. | (Super. Ct. No. CIVRS1204737) |
| BANK OF AMERICA N.A. et al., | ORDER GRANTING REQUEST FOR PUBLICATION |
|    Defendants and Respondents. | |

The National Association of Consumer Advocates, The Sturdevant Law Firm and Appellants have requested that our opinion in this matter, filed August 25, 2014, be certified for publication. After reviewing the request, we have concluded the case indeed meets the requirements for publication. Pursuant to California Rules of Court, rules 8.1105(b), 8.1105(c)(2)(4) and (6), the request is GRANTED.

The opinion is ordered published in the Official Reports.


BEDSWORTH, J.

I CONCUR:


FYBEL, J.